No. 87-248

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

TRACY DOUGLAS SMITH,

        Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Leonard J. Haxby, Butte, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Barbara Claassen, Asst. Atty. General, Helena
        Patrick L. Paul, County Attorney, Great Falls, Montana
        Stephen Hagerman, Deputy County Atty., Great Falls

Submitted on Briefs: March 24, 1988

Decided: May 26, 1988

Filed:

MAY 2 6 1988

*Ethel M. Harrison*

———————————————————
               Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This is an appeal from a criminal conviction. A jury in the Eighth Judicial District found appellant Tracy Douglas Smith guilty of aggravated kidnapping. Smith was sentenced to 25 years in prison for the offense, with 10 years suspended. Smith also received an additional sentence of 10 years for being a persistent felony offender, and 5 years for the commission of a crime with a weapon. Smith appeals the conviction and the sentencing. We affirm as to issues 1,2,3, and 5, and reverse issue 4 in regard to Smith's enhanced sentence for being a persistent felony offender. The other subissues in issue 4 are affirmed.

Smith raises the following issues for review:

(1) Did the Court err in denying Smith's motion to dismiss for violation of Smith's right to a speedy trial?

(2) Did ineffective assistance of counsel result in the denial of Smith's constitutional right to counsel?

(3) Did prosecutorial misconduct result in abridgment or denial of Smith's constitutional rights?

(4) Did the Court err by failing to follow substantive and procedural requirements in sentencing Smith?

(5) Did the Court err by failing to properly instruct the jury?

The facts briefly are as follows: On July 5, 1986, Smith and three other individuals; Fred Gierke, Leland LaPier, and Kim Stevens, rode in LaPier's car to a Great Falls residence where Gierke hoped to find Vivian Tulickas. When they arrived they observed Tulickas and Tulickas's boyfriend, Steven Frey, entering Frey's car. Smith and LaPier approached Frey's car and LaPier ordered Tulickas out

2

of the car while Smith restrained Frey. Tulickas, LaPier, and Smith then returned to LaPier's car where Gierke sat waiting to speak to Tulickas. After Tulickas was positioned in the back seat with Gierke, Gierke began to slap Tulickas and demand the return of money he believed Tulickas had stolen from him. Gierke then ordered LaPier to drive to a field outside of town where he continued to beat Tulickas. Smith participated in the assault by holding a gun and by giving encouragement to Gierke to beat Tulickas more severely. During the beating, Tulickas denied stealing Gierke's money, but promised to give Gierke $100 and a bus ticket she claimed to have at a residence in Great Falls. At that point Gierke ceased assaulting Tulickas and agreed to take her back to Great Falls to retrieve the money and the ticket.

After LaPier's car had carried Tulickas from the scene of the abduction, Frey called the police and reported the license number on the car. When LaPier's car appeared in Great Falls on its way to retrieve the money and the bus ticket, police spotted and stopped the vehicle, freed Tulickas, and arrested the other passengers. Smith's participation in the abduction resulted in the aggravated kidnapping conviction.

Issue I.

Smith claims that his right to a speedy trial was denied due to delay on the part of the State. The State contends that the delay from the date of arrest, July 6, 1986, to the date of trial, November 17, 1986, is not sufficiently long to trigger further speedy trial analysis. We agree with the State.

The length of delay is the first of four factors to be considered in analyzing speedy trial claims. State v. Kerns

3

(Mont. 1986), 725 P.2d 1190, 1191, 43 St.Rep. 1632, 1635. And unless the delay is "long enough to be presumptively prejudicial, no further inquiry is required." Kerns, 725 P.2d at 1191. In this case, the delay of 134 days between the arrest and the trial is not sufficiently long to trigger further analysis, and we affirm on this issue.

## Issue II.

Smith claims that the ineffective representation provided by his legal counsel violated the right to counsel guarantees found in the United States Constitution, Sixth and Fourteenth Amendments, and the Montana Constitution, Art. II, § 24. Smith contends that the specific errors on the part of his counsel were: failure to move for an order for a psychiatric evaluation of Smith, failure to call favorable witnesses, and failure to allow Smith to testify. The State contends that Smith has failed to show that his counsel's performance was deficient. We agree with the State.

To make a valid claim for ineffective assistance of counsel, the defendant must show that his counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment, and that the deficient performance prejudiced the defense. State v. Matson (Mont. 1987), 736 P.2d 971, 977, 44 St.Rep. 874, 882. Furthermore, "we will not allow unsupported allegations to brand counsel's performance as deficient." Matson, 736 P.2d at 977. The only evidence of ineffective assistance of counsel comes from Smith's own allegations. The record, on the other hand, reveals that Smith's counsel provided competent representation. Thus, we find Smith's allegations to be unfounded and we affirm on this issue.

4

ISSUE III.

Smith contends that remarks made by the prosecutor in the State's closing argument constituted prosecutorial misconduct. The remarks were to the effect that men should not physically assault women, and that the period of physical restraint in an alleged kidnapping may be as short as 10 to 15 minutes or less. The State contends that no objection was made to the remarks in the lower court, and thus no appealable issue exists. Smith urges this Court to apply the plain error rule. We find the plain error rule inapplicable, and agree with the State that this is not an appealable issue. See State v. Pease (Mont. 1986), 724 P.2d 153, 163, 43 St.Rep. 1417, 1430. Thus we affirm on this issue.

ISSUE IV.

Smith contends that the sentencing procedures were deficient in several respects:

A. Smith contends that the court erred in adding 10 years to Smith's sentence for being a persistent felony offender because the trial court's decision is based on evidence improperly before the court. Specifically, Smith contends that no proper foundation was laid for: admission of the judgment documenting Smith's previous conviction; admission of testimony on Smith's fingerprints as recorded in the record from Smith's previous conviction; and admission of a tape recording of a telephone conversation between Smith and a Great Falls police officer. The recording documents a call made by Smith to police wherein Smith complains of police harassment.

The State responds that Smith's claim on this issue fails because the rules of evidence do not apply to sentencing, and because the Court relied on competent

5

evidence in sentencing Smith. We agree and affirm on this subissue. See State v. Lamere (1983), 202 Mont. 313, 321-22, 658 P.2d 376, 380-81.

B. Smith contends that the trial court erroneously relied on § 46-18-501(2)(b), MCA, to find that Smith was a persistent felony offender because over five years had passed since the commission of the current offense and Smith's previous felony. The State responds that probation from Smith's previous suspended sentence constitutes commitment, and that the probation ended less than five years before the commission of the current offense.

Section 46-18-501(2)(b), MCA, defines a defendant as a persistent felony offender if the defendant was previously convicted of a felony and less than five years have passed since:

> (b) the offender's release on parole or otherwise from prison or <u>other</u> <u>commitment</u> imposed as a result of the previous <u>felony</u> conviction.

Section 46-18-501(2)(b), MCA, (emphasis added).

The judgment for the previous conviction, entered on December 20, 1979, sentenced Smith to 3 years in prison with execution of the sentence suspended provided that during the suspension Smith abide by the rules and regulations of the Montana State Board of Pardons and that he not possess, use, or sell dangerous drugs. In addition, the judgment provided that Smith would submit his person, his residence, and his vehicles to search and seizure at any time by probation officers, police officers, or other lawful authorities without a search warrant and without a prior requirement that probable cause be shown, and that Smith obey all United States, state, and municipal laws.

None of these probationary conditions constitute "commitment" under § 46-18-501(2)(b), MCA. Commitment may be defined as:

> [T]he act of taking or sending to the prison, mental health facility, or the like. A person is committed when he is actually sentenced to confinement by a court as contrasted with a suspended sentence or probation.

Black's Law Dictionary 248 (5th ed. 1979). The distinction between probation and confinement in defining commitment is supported by other usage of the word "commitment" in the code. For example, after revocation of a suspended sentence the defendant is ordered "committed". Section 46-18-203, MCA. And § 46-19-101, MCA, provides:

> Commitment of defendent. Upon rendition of judgment after pronouncement of sentence imposing punishment of imprisonment or death, the court shall commit the defendant to the custody of the sheriff, who shall deliver the defendant to the place of his confinement or execution.

Section 46-19-101, MCA. Thus, the plain meaning of the word "commitment" reveals that the period of commitment begins when the defendant is handed over to law enforcement personnel for confinement, and our analysis need not proceed further because the plain meaning of the word controls its interpretation. State v. Hubbard (1982), 200 Mont. 106, 111, 649 P.2d 1331, 1333. However, our resolution of this issue is also supported by the apparent purpose of employing the term "other commitment" for initiating the period of time between convictions. That intent, as demonstrated by the other event which initiates the five year period in this subsection; release from prison, is to have the time start to run when the habitual offender is once again free, if he or she chooses, to victimize society. Thus, this subissue is

reversed, and the enhanced sentence of ten years received under § 46-18-501(2)(b), MCA, is hereby declared to be void and we order it stricken. See Lewis v. State (1969), 153 Mont. 460, 463, 457 P.2d 765, 766; 24B C.J.S Criminal Law § 1946 (1962).

C. Smith contends that the trial court erred by failing to set out with particularity its findings in regard to dangerous offender status. The State contends that the District Court's sentence contains adequate findings. A review of the sentence shows that the District Court found the following facts in designating Smith a dangerous offender:

> 1. The Defendant admits to using "lots of cocaine" on a daily basis prior to his arrest.
> 2. The probation and parole officer found the Defendant to have intense anger for any kind of authority.
> 3. A long history of misdemeanor arrests.
> 4. The testimony of several witnesses that the Defendant has threatened to harm them or their families.
> 5. The commission of a serious crime while still on parole.

We hold that these findings satisfy the mandate of § 46-18-404, MCA, and we affirm on this subissue.

D. Smith also contends that the sentence in open court varied with the sentence document which incorporated the dangerous offender findings. Thus, according to Smith, the sentence violates Montana law. Smith fails to cite the law violated, but the contention apparently addresses the open court sentencing requirements of § 46-18-102, MCA, which states:

8

> (1) The judgment shall be rendered in open court.
>
> (2) If the verdict or finding is not guilty, judgment shall be rendered immediately and the defendant shall be discharged from custody or from the obligation of his bail bond.
>
> (3) (a) If the verdict or finding is guilty, sentence shall be pronounced and judgment rendered within a reasonable time.
>
> (b) When the sentence is pronounced, the judge shall clearly state for the record his reasons for imposing the sentence.

At the time of the sentence the District Court stated:

> Now, the Court has already found you to be a persistent felony offender. A jury of the citizens of this state have found you guilty of aggravated kidnapping. And the Court sat through the testimony, and the Court finds that this was a felony that was committed with a dangerous weapon, a gun.
>
> So it's the sentence of this Court on the offense of aggravated kidnapping that you be confined to the Montana State Penitentiary for a period of 25 years. That ten of those years are suspended.
>
> That on the persistent felony offender charge, that you be given an additional 10 years. That that time is to be consecutive to the time for the aggravated kidnapping charge.
>
> For the commission of the offense with a dangerous weapon, the Court is going to add on an additional five years. And that is to run consecutive with the previous two sentences.
>
> For purposes of parole eligibility, the Court is declaring you a dangerous offender.

We refuse to reverse on this subissue because the reasons for declaring Smith a dangerous offender are apparent in the transcript of the sentencing hearing, and thus any failure to articulate them in pronouncing the sentence constitutes harmless error. See State v. Hintz (Mont. 1984), 691 P.2d 814, 816, 41 St.Rep. 2172, 2176. Thus, except as to subissue B, this issue is affirmed.

9

## ISSUE V.

Smith's final argument is that the trial court erred by giving the following instruction:

> If you are satisfied that the crime charged in the information was committed by someone, then you may take into consideration any testimony showing, or tending to show, intimidation by the defendant, Tracy Douglas Smith. This testimony may be considered by the jury as circumstance tending to prove a consciousness of guilt, but is not sufficient of itself to prove guilt. The weight to be given such circumstance and significance if any, to be attached to it, are matters for the jury to determine.

Smith contends that the above instruction is an improper adaptation of the instruction used when a defendant's flight is relevant to the defendant's consciousness of guilt. Smith argues that instructing the jury that it may consider intimidation as evidence of consciousness of guilt is highly prejudicial. Smith fails to explain why the instruction was highly prejudicial.

The State points out that the instruction is contained in the Montana Criminal Jury Instructions, and that the comment to the instruction states that it is appropriate where evidence of intimidation exists. Evidence of intimidation on the part of Smith existed in this case. Thus, Smith's argument here lacks merit. We affirm on all issues except as set out in regard to issue 4.

_____
Justice

We Concur:

_____

_____

_William E. Hunt, Sr._

_John C. Sheehy_
Justices

11