No. 98-727

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 180

295 Mont. 288

983 P.2d 937

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ANTHONY LEE MONTOYA,

Defendant and Appellant.

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Hill,

The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeremy S. Yellin, Attorney at Law, Havre, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General

Pamela P. Collins, Ass't Attorney General, Helena, Montana

David Rice, Hill County Attorney,

Aileen Miller, Deputy Hill County Attorney, Havre, Montana

Submitted on Briefs: May 27, 1999

Decided: July 27, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Anthony Lee Montoya (Montoya) appeals from the sentence of the Twelfth Judicial District Court, Hill County, designating Montoya as a persistent felony offender based on a prior felony conviction from 1984. We affirm.**

**¶2. The sole issue on appeal is whether the District Court properly designated Montoya a persistent felony offender based on his prior felony conviction.**

Factual and Procedural Background

**¶3. On May 17, 1984, pursuant to an earlier plea of guilty to three counts of felony burglary, Montoya was sentenced to a three-year deferred imposition of sentence, with conditions. Thereafter, Montoya signed up for the rules of probation. However, authorities received a Report of Violation on June 20, 1985, which indicated that Montoya was in violation of his conditions of probation, and a bench warrant for his arrest was subsequently issued. After being apprehended and admitting probation violations, Montoya was sentenced, on February 19, 1987, to five years in the Montana State Prison, with all five years suspended. Thereafter, Montoya again**

signed up for rules of probation.

¶4. On October 24, 1990, authorities received another Report of Violation of Montoya's conditions of probation. That same day, a bench warrant was issued for Montoya's arrest. After being apprehended, Montoya's suspended sentence was revoked and he was re-sentenced, on October 28, 1994, to the Department of Corrections (DOC) for a five-year period, with two years suspended. The sentencing court imposed conditions on the suspended portion of Montoya's sentence.

¶5. On December 1, 1994, Montoya was placed in the Great Falls Transitional Center for completion of the Pre-Release Program. He was terminated from that program due to alcohol use, and was thus returned to the Montana State Prison on January 11, 1995. On June 16, 1995, Montoya was transferred to the Alpha House Pre-Release Program in Billings. On January 11, 1996, Montoya was released on parole from the pre-release center. On June 16, 1996, Montoya was discharged from parole and began serving the two-year suspended portion of his sentence. On December 18, 1996, a Report of Violation was submitted based on Montoya's failure to comply with several conditions of his probation, and a bench warrant was issued.

¶6. However, Montoya had absconded; authorities did not know Montoya's whereabouts until he was arrested on February 14, 1998, for a burglary and theft incident. The incident giving rise to Montoya's arrest was alleged to have occurred on or about March 23, 1997. On that date, a ranch south of Havre was burglarized by Montoya and two accomplices. Thereafter, Montoya was positively identified in a photographic lineup by an eyewitness to the burglary.

¶7. On February 17, 1998, Montoya and one of his accomplices were transported from Great Falls in a patrol car to testify in the trial of the other accomplice. During the drive, the deputy overheard Montoya make admissions about his involvement in the ranch incident. On March 3, 1998, an Amended Information was filed charging Montoya, in Count I, with felony burglary, in violation of § 45-6-204, MCA, and in Count II, with misdemeanor theft, in violation of § 45-6-301, MCA.

¶8. On March 9, 1998, Montoya was arraigned and pleaded not guilty to the charges. On that same day, the State filed a Corrected Notice of Intent to Seek Persistent Felony Offender Status for Montoya. Trial by jury commenced on August 26, 1998. On August 27, 1998, the jury returned a guilty verdict as to Count I, felony burglary,

**and a not guilty verdict as to Count II, misdemeanor theft.**

**¶9. A sentencing hearing took place on October 29, 1998. The District Court found that the State had given timely notice of seeking persistent felony offender status for Montoya, and that Montoya was a persistent felony offender within the meaning of § 46-18-501(2)(b), MCA. Although the suspended portion of Montoya's sentence for his previous felony conviction could have been revoked because of the current felony conviction, he was "allowed to terminate" his sentence for the 1984 burglary.**

**¶10. For Count I, felony burglary, the District Court sentenced Montoya to four years in the Montana State Prison. Moreover, under the persistent felony offender statute, Montoya was sentenced to an additional five years in the Montana State Prison. However, because of "[t]he substantial time between the convictions of felony offenses, and the non-violent nature of the crime," the District Court ordered the sentence for burglary to run concurrently with the persistent felony offender sentence.**

Standard of Review

**¶11. Although not put at issue by the parties, we note at the outset that there is a rather prevalent inconsistency in this Court's case law regarding the appropriate standard of review of criminal sentences. For example, in State v. Gunderson (1997), 282 Mont. 183, 936 P.2d 804, we declared, in a contradictory manner, that the standard of review of a criminal sentence is as follows:**

District Courts have broad discretion in sentencing criminal defendants. We review criminal sentences only to determine whether the district court <u>abused its discretion</u> in sentencing the defendant. *State v. Graveley* (1996), 275 Mont. 519, 521, 915 P.2d 184, 186. Our review of a sentence is limited to <u>questions of legality</u>, *State v. Graves* (1995), 272 Mont. 451, 463, 901 P.2d 549, 557, and a sentence is not illegal when it is within the parameters provided by statute. *State v. Henry* (1995), 271 Mont. 491, 497-98, 898 P.2d 1195, 1199. [Emphasis added.]

*Gunderson*, 282 Mont. at 187, 936 P.2d at 806.

**¶12. The above quotation sets forth plainly inconsistent standards of review.**

No

**Questions of the equity of a sentence fall under the purview of the Sentence Review Division, while this Court's review of a sentence is limited to questions of legality. A question of legality, in turn, implies *de novo* review--a sentence is either legal or it is not. Conversely, questions of equity are fact-specific and, thus, more appropriately confined to abuse of discretion review.**

**¶13. We take this opportunity to clarify the proper standard of review of criminal sentences. Tracing back through the case law from the 1997 *Gunderson* opinion suggests that the source of confusion is probably State v. Davison (1980), 188 Mont. 432, 614 P.2d 489, in which this Court stated:**

In other words, it is not to be presumed that a disparity in sentences imposed indicates increased punishment for exercising the right to trial. A defendant must show <u>abuse of discretion</u>. . . . This Court has . . . said that the extent of punishment is vested in the sound discretion of the trial court. <u>We note that the equitability of a sentence, as opposed to its legality, is a matter for the Sentence Review Board</u>.

In the present case, the sentence was well within the statutory maximum. The judge outlined his reasons for the sentence and these reasons do not include the defendant's decision to go to trial. <u>The reasons given support the severity of the sentence given. There was no showing of abuse of discretion</u>. Consequently, the defendant was not denied his right to a trial. [Emphasis added.]

*Davison*, 188 Mont. at 444, 614 P.2d at 496 (citations omitted); see also State v. White (1982), 200 Mont. 123, 128, 650 P.2d 765, 768, citing Davison ("[T]o undermine the legality of a sentence imposed on a defendant in the District Court, abuse of discretion in the sentencing process is necessary.").

**¶14. This Court's recognition in *Davison* that a challenge to the "equitability" of a sentence falls under the authority of the Sentence Review Division is patently inconsistent with the holding that the sentencing court did not abuse its discretion because the "severity of the sentence"--clearly a matter of sentencing equity--was supported by the evidence. In *Davison*, it appears that this Court was continuing to do what it had done prior to the creation of the Sentence Review Division, namely, to first review the sentence for legality within statutory parameters, and, assuming that the sentence was not based on legal error, to then review the actual sentence imposed in relation to the sentencing evidence under an abuse of discretion standard.**

¶15. It makes no sense under the present system of bifurcated criminal sentence review to have such a two-tiered standard of review. The juxtaposition of an abuse of discretion <u>and</u> a *de novo* standard of review that can still be found in contemporary cases like *Gunderson* is a carry-over from the days when this Court reviewed all sentencing challenges, prior to the creation of the Sentence Review Division. Today, we lay to rest this anachronism. This Court reviews a criminal sentence only for legality (i.e., whether the sentence is within the parameters provided by statute). To the extent that *Davison*, *White*, *Gunderson*, and any other decisions from this Court suggest that we also review criminal sentences for an abuse of discretion, they are overruled.

¶16. Having clarified this Court's appropriate standard of review of criminal sentences, we turn to the correct standard of review in this case. Montoya, rather than challenging the actual sentence imposed, challenges the District Court's conclusion that he could be designated a persistent felony offender pursuant to § 46-18-501(2)(b), MCA. The District Court's designation of Montoya as a persistent felony offender involves a question of statutory interpretation. We review a trial court's interpretation of the law, including questions of statutory interpretation, to determine whether the court's interpretation is correct. State v. Brummer, 1998 MT 11, ¶ 31, 287 Mont. 168, ¶ 31, 953 P.2d 250, ¶ 31; State v. Bell (1996), 277 Mont. 482, 486, 923 P.2d 524, 526.

Discussion

¶17. Did the District Court err in designating Montoya a persistent felony offender?

¶18. Section 46-18-501(2), MCA, provides that a defendant can be designated a persistent felony offender if:

<u>less than 5 years have elapsed between the commission of the present offense and</u> either:

(a) the previous felony conviction; or

(b) <u>the offender's release on parole or otherwise from prison or other commitment imposed as a result of the previous felony conviction</u> . . . .

Section 46-18-501(2), MCA (emphasis added).

¶19. Montoya argues that the District Court incorrectly found that he was a persistent felony offender because the approximate thirteen years separating his prior felony conviction from his current felony conviction is far in excess of the five-year time limit set forth in § 46-18-501(2)(b), MCA. In making this claim, Montoya relies on State v. Smith (1988), 232 Mont. 156, 755 P.2d 569, asserting that his initial probationary sentence for the 1984 felony conviction does not amount to a "commitment" under § 46-18-501, MCA, and, therefore, that his probationary period cannot be used to extend the five-year period under the statute. In sum, Montoya claims that "the fact that he was sentenced to a period of commitment for probation violations in 1994 cannot serve as the basis for a persistent felony designation" because over five years had elapsed since he was first placed on probation for the prior felony.

¶20. The State responds that Montoya was indeed "committed" to the DOC in 1994 pursuant to the 1984 conviction, from which he was released on parole on January 11, 1996. In turn, the State asserts that "the date the defendant is released on parole from prison, or from other commitment, triggers the commencement of the five-year period" in § 46-18-501(2)(b), MCA. Thus, the State contends that the District Court properly designated Montoya a persistent felony offender under the statute, since (1) Montoya's release on parole in 1996 triggered the start of the five-year period and (2) less than five years elapsed between Montoya's release on parole and his 1998 felony conviction. We agree.

¶21. Montoya misreads *Smith* in arguing that a defendant's probationary period for a felony conviction cannot be used to increase the five-year period under § 46-18-501 (2)(b), MCA. In *Smith*, the defendant had been convicted of a prior felony in 1979 and sentenced to three years in prison, with all three years suspended with various probationary conditions. On appeal, the State argued that the trial court had properly sentenced the defendant as a persistent felony offender because the defendant's prior suspended sentence constituted "commitment" and the defendant's probationary period for the prior felony offense had terminated less than five years before the second felony offense. This Court disagreed:

None of these probationary conditions constitute "commitment" under § 46-18-501(2)(b), MCA. . . .

. . . "A person is committed when he [or she] is actually sentenced to confinement by a

court as contrasted with a suspended sentence or probation."

*Smith*, 232 Mont. at 161, 755 P.2d at 572, quoting Black's Law Dictionary 248 (5th ed. 1979).

**¶22. *Smith* makes it clear, as the State argues, that a defendant's release on probation does not activate the five-year period of § 46-18-501(2)(b), MCA, because probation does not constitute "commitment" under the statute. Indeed, the *Smith* Court drew a crucial "distinction between probation and confinement in defining commitment," concluding that "the plain meaning of the word 'commitment' reveals that the period of commitment begins when the defendant is handed over to law enforcement personnel for confinement . . . ." *Smith*, 232 Mont. at 161-62, 755 P.2d at 572.**

**¶23. Montoya concedes that "he was sentenced to a period of <u>commitment</u> for probation**

violations in 1994," but argues that this scenario does not fall within the meaning of commitment as contemplated in § 46-18-501(2)(b), MCA. He fixates on the *dictum* in *Smith* that the five-year period begins "to run when the habitual offender is once again free, if he or she chooses, to victimize society." *Smith*, 232 Mont. at 162, 755 P.2d at 572. Based on this *dictum*, Montoya argues that he was "free" to victimize society when he was given his initial suspended sentence in 1984 and that the five-year period was thus triggered at that time, rather than when he was released on parole in 1996.

**¶24. Not only is such *dictum* not binding precedent, *see* State v. Gopher (1981), 193 Mont. 189, 194, 631 P.2d 293, 296, but this Court was clearly referring to a defendant being set "free" from prison or other commitment. As *Smith* held, probation does not constitute "commitment." However, if probation is not commitment within the meaning of the statute, then a suspended or probationary sentence cannot be an event that triggers the commencement of the five-year period under the plain language of the statute. *See* § 46-18-501(2)(b), MCA.**

**¶25. Moreover, as the State points out, this Court has indicated that the date on which a defendant is released on parole from any sort of "confinement" for the previous felony conviction triggers the commencement of the five-year period of § 46-18-501(2)(b), MCA. For example, in State v. Ballard (1982), 202 Mont. 81, 655 P.2d 986, this Court recognized that:**

Section 46-18-501(2), MCA, classifies a person as a persistent felony offender if less than five years have elapsed between the commission of the present offense and defendant's release on parole for the previous felony conviction. The present offense occurred on February 14, 1981, and defendant was paroled from his previous felony conviction (burglary) on March 17, 1976, clearly falling within the five-year time limit.

*Ballard*, 202 Mont. at 87, 655 P.2d at 989.

**¶26. Even more on point for purposes of the State's argument on persistent felony offender status is our discussion in State v. Graves (1990), 241 Mont. 533, 788 P.2d 311:**

Here, defendant was previously convicted of mitigated deliberate homicide on February 19, 1980, and was paroled on that offense on October 9, 1985. Defendant was convicted of the offenses associated with the present appeal on March 29, 1989. Therefore, defendant met the definitional requirements of a persistent felony offender.

*Graves*, 241 Mont. at 540, 788 P.2d at 315. *Graves makes it clear that "release on parole or otherwise from prison or other commitment," § 46-18-501(2)(b), MCA, triggers the commencement of the statutory five-year period, irrespective of whether the prior felony conviction occurred more than five years in the past.*

**¶27. Here, Montoya's initial suspended sentence for his 1984 felony burglary conviction was revoked and he was re-sentenced to the Montana State Prison for five years in 1994,**

**with two years of his sentence suspended with conditions. Montoya was then released on parole from that "commitment" in 1996. Under § 46-18-501(2)(b), MCA, the five-year period therefore began to run on January 11, 1996, and Montoya's subsequent 1998 felony conviction was well within the five-year time limit of the statute. Accordingly, we hold that the District Court did not err in designating Montoya a persistent felony offender.**

**¶28. Montoya also attempts to argue that the plain meaning of the word "persistent," as illustrated by an ordinary dictionary definition, supports his position that he was**

**improperly designated a persistent felony offender by the District Court. However, we decline to address this argument. As the State points out, an ordinary definition of the word "persistent" is irrelevant because § 46-18-501, MCA, and this Court's case law specifically define the phrase "persistent felony offender." Section 1-2-106, MCA (technical words and phrases that have acquired a "peculiar and appropriate meaning in the law" are to be construed according to such particularized meaning or definition).**

**¶29. Affirmed.**

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER