No. 97-620

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 334

297 Mont. 402

994 P.2d 17

STATE OF MONTANA,

Plaintiff and Respondent,

v.

JOHNNIE DEVOE BALES,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Margaret L. Borg, Public Defender Office, Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jennifer Anders,

Assistant Attorney General; Helena, Montana

Michael W. Sehestedt, Missoula County Attorney; Missoula,

Montana

Submitted on Briefs: March 22, 1999

Decided: December 29, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶ Appellant Johnnie Bales (Bales) appeals from the judgment and verdict of the Fourth Judicial District Court, Missoula County.

¶ We affirm.

¶ We restate the issues as follows:

¶ 1. Whether the District Court abused its discretion in allowing the jury to hear a tape recording of a police interview with Bales during its deliberations.

¶ 2. Whether the State gave adequate notice of its intent to have Bales designated as a persistent felony offender.

¶ 3. Whether the State's seeking a persistent felony offender designation for Bales was prosecutorial misconduct.

¶ 4. Whether the District Court erred in concluding that Bales is a persistent felony offender.

Standard of Review

¶ We review a district court's evidentiary rulings to determine whether the district court has abused its discretion. State v. Stringer (1995), 271 Mont. 367, 374, 897 P.2d 1063, 1067. Factual and Procedural Background

¶ In June, 1996 Bales and his girlfriend, Dorie Hurt (Hurt) went for a drive in his jeep. The passenger seat belt in the jeep was inoperable. Bales lost control of his jeep and it flipped on its side. Hurt was thrown out of the jeep and died at the scene of the accident. Bales' right hand was severely injured. Montana Highway Patrol Officer Burman conducted a taped interview of Bales at a hospital after the accident. Bales scored six out of a maximum of six points on an horizontal gaze nystagmus test (hereafter, HGN), which evaluates indicia of alcohol intoxication. Bales' blood alcohol content (BAC) was determined to be 0.27. A Sheriff's Deputy found a can of beer and a bottle of vodka in a paper bag in the jeep.

¶ Bales was charged with one count of Negligent Homicide and one count of Operating a Vehicle Without Valid Liability Insurance in Effect. Bales entered a plea agreement in which the State agreed to recommend a ten-year suspended sentence on the Negligent Homicide charge. However, the District Court rejected the plea agreement, and Bales withdrew his guilty plea. During the jury trial that followed, in May, 1997, the State played the tape of Bales' interview with Officer Burman for the jury. At the close of the trial, and over Bales' objection, the District Court admitted the tape as an exhibit that the jury could hear during its deliberations.

¶ The jury convicted Bales on both counts. The District Court determined that Bales was a persistent felony offender and sentenced him to forty years prison with twenty years suspended on the Count of Negligent Homicide and to six months in county jail on the Count of Operating a Vehicle Without Valid Liability Insurance in Effect, the time in county jail to run concurrent with his prison sentence.

Discussion

¶ 1. Whether the District Court abused its discretion in allowing the jury to hear a tape

recording of a police interview with Bales during its deliberations.

¶ Relying on United States v. Welch (7th Cir. 1991), 945 F.2d 1378, the District Court admitted the tape recorded interview that Officer Burman conducted with Bales at the hospital after the accident (hereafter, the tape) as an exhibit that the jury could hear unsupervised during its deliberations. In *Welch*, the court held that the trial court did not abuse its discretion in allowing the jury to hear a surveillance tape recording of the defendant and a government witness.

¶ Bales argues that the District Court abused its discretion in allowing the jury to hear the tape during its deliberations. Bales contends that the tape contains statements by him that are prejudicial. For example, Officer Burman can be heard advising Bales of Montana's informed consent law and Bales, in response, refusing to consent to have his blood drawn. Bales asserts that whether he consented to have his blood drawn was not an issue and that his refusal could unfairly prejudice jurors. Further, Bales argues that the tape was a "testimonial material" whose review by the jury created a danger that undue emphasis would be placed on its inculpatory contents, thereby "making less important the testimony of witnesses and other evidence produced at Mr. Bales' trial." Bales also asserts that *Welch* does not apply in the present case because *Welch* involved a surveillance tape.

¶ The State responds that the tape was a demonstrative exhibit that was probative of Bales' state of mind and that it could therefore go to the jury room without restriction under § 46-16-504, MCA. The State concedes that the tape contains admissions by Bales but argues that those statements did not resolve the issue "whether Bales' negligence caused Dorie Hurt's death."

¶ We initially determine whether the tape was testimonial evidence. As previously noted, the State contends that the tape was merely demonstrative evidence of Bales' extreme remorse and emotional upheaval. This argument is unpersuasive and belied by the record. We note that the State did not move for the admission of the tape for nonsubstantive purposes and that the District Court did not admit the tape for limited purposes. Moreover, the State has not suggested how the tape's evidence that Bales was extremely remorseful and distraught after the accident would further the State's case. Further, the tape contains statements by both Bales and Officer Burman concerning matters about which they also testified. For example, Bales can be heard saying that he had a few beers before the accident and that he killed his girlfriend when he tried to avoid a deer on the road. Officer Burman can be heard conducting the HGN and announcing its result. Bales and Officer

Burman testified about these matters. Thus, although the tape is not a record of "[e]vidence elicited from a witness," Black's Law Dictionary 580 (7th ed. 1999) (defining testimonial evidence), we conclude the tape has a testimonial character.

¶ We turn to § 46-16-504, MCA, which provides:

> **Items that may be taken into jury room**. Upon retiring for deliberation, the jurors may take with them the written jury instructions read by the court, notes of the proceedings taken by themselves, and all exhibits that have been received in the cause that in the opinion of the court will be necessary.

We note that § 46-16-504, MCA, does not distinguish between demonstrative and testimonial exhibits but invites the admission of *any* exhibit "that in the opinion of the court will be necessary." Section 46-16-504, MCA.

¶ We have previously considered the admission of testimonial evidence under § 46-16-503, MCA, which governs jury requests for information and provides in pertinent part:

> After the jury has retired for deliberation, if there is any disagreement among the jurors as to the testimony or if the jurors desire to be informed on any point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. The information requested may be given, in the discretion of the court, after consultation with the parties.

Section 46-16-503(2), MCA.

¶ In State v. Harris (1991), 247 Mont. 405, 808 P.2d 453, we recognized the common law rule "against submitting testimonial materials to the jury for unsupervised and unrestricted review during deliberations." *Harris*, 247 Mont. at 417, 808 P.2d at 460 (*quoting* Chambers v. State (Wyo. 1986), 767 P.2d 1269, 1276). We concluded that § 46-16-503(2), MCA, had altered the common law rule but only "under certain limited circumstances." *Harris*, 247 Mont. at 417, 808 P.2d at 459. The *Harris* Court concluded that "[t]he kind of request contemplated by § 46-16-503(2), MCA, includes an inquiry concerning a witness's testimony as to the width of a street, the height of an object, distance, time or some other limited request, but not the entire testimony of the witness." *Harris*, 247 Mont. at 417, 808 P.2d at 460. Further, the *Harris* Court determined that before a jury begins deliberations, it

should receive particular instructions regarding requests for information. *Harris*, 247 Mont. at 417, 808 P.2d at 460. The Court in *Harris* determined that the district court abused its discretion in having the entire testimony of an alleged victim read to the jury after the start of deliberations because the "reading of the testimony prejudiced defendant by placing undue emphasis on the statement of the alleged victim to the exclusion of the testimony of other witnesses." *Harris*, 247 Mont. at 418, 808 P.2d at 460.

¶ In several other decisions, we have also recognized under § 46-16-503(2), MCA, that allowing juries to hear testimonial evidence during deliberations can unduly emphasize such evidence to the exclusion of other testimony. *See* State v. Mayes (1992), 251 Mont. 358, 374, 825 P.2d 1196, 1206 (concluding district court abused its discretion in allowing jury to hear tape recordings of two witnesses whose testimony was critical to state); *compare* State v. Evans (1993), 261 Mont. 508, 513, 862 P.2d 417, 420 (concluding district court did not abuse its discretion in denying jury request to hear testimony that concerned critical element of proof). In both *Mayes* and *Evans*, this Court emphasized the danger in allowing juries to hear evidence critical to the State's case during their deliberations.

¶ The State correctly observes that this Court and other jurisdictions have allowed juries to hear tape recordings of defendants during jury deliberations. *See, e.g.,* State v. Morse (1987), 229 Mont. 222, 233, 746 P.2d 108, 115 (concluding district court did not abuse its discretion in allowing jury to hear surveillance tape recording of defendant); People v. Walker (Cal. Dist. Ct. App. 1957), 310 P.2d 110 (concluding jury could play tape of confession that had been admitted in evidence); State v. Robinson (Haw. 1995), 903 P.2d 1289, 1294 (holding that "audiotaped and videotaped evidence of a defendant's voluntary confession, which has passed all tests of admissibility and has been duly received into evidence, may be allowed into the jury room for use by the jury during deliberations").

¶ We conclude, however, that these decisions are distinguishable from the present case. *Morse* was decided before *Harris*; in *Morse*, the Court did not determine whether the tape of the defendant unduly emphasized testimony. To the extent that *Morse* is inconsistent with *Harris* regarding the submission of testimonial materials to a deliberating jury, it is overruled. Further, the court in *Walker* also did not assess the potential prejudice from a tape recording. In *Robinson*, finally, the court's holding was limited to defendants' taped confessions. However, the taped interview of Bales is not a confession.

¶ In the present case, the District Court did not state its statutory authority for allowing the

jury to hear the tape. However, § 46-16-503(2), MCA, clearly does not apply because it concerns jury *requests* for information: the jury did not request the tape. We therefore address the admissibility of the tape under § 46-16-504, MCA. Although § 46-16-504, MCA, does not distinguish between demonstrative and testimonial exhibits, the risk of undue emphasis that we have recognized for testimonial materials under § 46-16-503, MCA, is also present for testimonial materials under § 46-16-504, MCA. *Compare* State v. Christenson (1991), 250 Mont. 351, 361, 820 P.2d 1303, 1310 (commenting that allowing deliberating jury to review "deposition testimony or other testimonial evidence" under § 46-16-504, MCA, carries danger that jury will give those materials undue emphasis). Thus, the "undue emphasis" analysis that we have applied under § 46-16-503 (2), MCA, in *Harris*, *Evans*, and *Mayes* applies to exhibits of a testimonial character under § 46-16-504, MCA.

¶ We hold that because the tape has a testimonial character, the District Court abused its discretion in allowing the jury to hear the tape during deliberations. The State does not contend and nothing in the plain language of § 46-16-504, MCA, suggests that the legislature intended this statute to abrogate the common law rule against the submission of testimonial materials that we recognized in *Harris*. We therefore determine whether the District Court's abuse of discretion prejudiced Bales. *See* § 46-20-701(1), MCA (providing "[a] cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial"). *Compare* State v. Henrich (1994), 268 Mont. 258, 268, 886 P.2d 402, 408 (concluding that district court's failure to give *Harris* instruction before allowing jury to hear portion of witness' testimony was harmless error). In determining whether an error is prejudicial, "we examine the totality of the circumstances in which the error occurred." State v. Hansen, 1999 MT 253, ¶ 85, ___ P.2d ___, ¶ 85, 56 St.Rep. 997, ¶ 85 (citation omitted).

¶ Having listened to the tape, we conclude that the District Court's ruling allowing the jury to hear the tape during deliberations did not unduly emphasize testimony to the exclusion of other witnesses. Bales has not claimed and the record does not show that the statements on the tape are inconsistent with those given by witnesses at trial. Moreover, Bales has not claimed that the tape was critical to the State's case. *Compare Mayes*, 251 Mont. at 374, 825 P.2d at 1206 (concluding district court abused its discretion in allowing jury to hear tape of testimony critical to state).

¶ Bales relies at length upon People v. Montoya (Colo. App. 1989), 773 P.2d 623, in arguing that he was prejudiced by the District Court's admission of the tape. In *Montoya*,

the court concluded that the trial court committed prejudicial error in allowing the jurors to have unsupervised and unrestricted access to a witness' videotaped identification of the defendant during their deliberations. The witness recanted his identification at trial. The *Montoya* court determined that although a videotape of a witness' deposition is not a deposition, "when it is placed before a jury under § 16-10-201 *for proof of the truth of the statements made by the witness*, those statements in such form become so akin to previously recorded testimony, such as an out-of-court-deposition, as to make their effect virtually indistinguishable from deposition testimony." *Montoya*, 773 P.2d at 626 (emphasis added). The *Montoya* court concluded that the trial court's failure to prevent undue weight being given the videotape prejudiced the "sworn exculpatory testimony of the same witness given in open court." *Montoya*, 773 P.2d at 626.

¶ Bales' reliance on *Montoya* is misplaced. Again, Bales has not shown that any statements on the tape were "to the prejudice of other testimony upon the same subject." *Montoya*, 773 P.2d at 625.

¶ Further, we reject Bales' assertion that the tape's record of his refusal to consent to a blood draw (hereafter, Bales' refusal) was especially prejudicial. The record shows that the State did not ask Officer Burman whether Bales refused to consent to a blood draw but inquired:

> Q. Okay. I--I believe you just described what the implied consent--did you discuss the--did you discuss the implied consent law with the Defendant?
>
> A. Yes.
>
> Q. Did you discuss the law that you can--can take a blood test when you have probable cause for an alcohol-related fatality?
>
> A. Yes.

Nor did the State comment on Bales' refusal in its closing argument. We also note that during the trial, the District Court asked Bales' counsel whether one could hear Bales' refusal on the tape. Bales' counsel responded "I think on the tape it's kind of glossed over. I think that the section there, it just jumps from Mr. Bales kind of mumbling to Mr. Burman saying, I believe I have probable cause to draw blood here." We agree. Bales' refusal is a minute part of the interview that is followed by Officer Burman's

determination that he had probable cause to order a blood draw, a determination that Bales has not challenged. We conclude that Bales' contention is without merit. Nor do we find persuasive Bales' argument that if the jury listened repeatedly to the tape, he would be unduly prejudiced. This argument rests on a wholly speculative foundation. Moreover, Bales has not argued that the probative value of the allegedly inculpatory statements on the tape is "substantially outweighed by the danger of unfair prejudice." Rule 403, M.R. Evid.

¶ Finally, we conclude that the statements by Bales and Officer Burman on the tape are merely cumulative of trial testimony. Bales correctly asserts that on the tape he admits, among other things, that he drank alcohol and drove and that there was beer in the jeep. Bales is also correct that on the tape, Officer Burman remarks that Bales smells of alcohol. However, Officer Burman's observation that Bales smelled of alcohol is consistent with Bales' own admissions that he drank alcohol before and after the accident. Moreover, the other statements on the tape were "additional evidence of the same character [and] to the same point" as testimony by witnesses. *Hansen*, ¶ 85 (citation omitted).

¶ In light of the totality of the circumstances, we conclude that the tape was merely cumulative of other evidence and that it did not prejudice Bales. *Compare* State v. Stuit (1996), 277 Mont. 227, 233, 921 P.2d 866, 870 (concluding officer's testimony identifying defendant as shooter in criminal endangerment case was cumulative of other testimony and therefore harmless). We therefore hold that the District Court's abuse of discretion in allowing the jury to hear the tape during deliberations was harmless error.

¶ 2. Whether the State gave adequate notice of its intent to have Bales designated as a persistent felony offender.

¶ Bales argues that under § 46-13-108, MCA, the State was required but failed to file written notice of its intent to have Bales designated as a persistent felony offender (hereafter, the State's notice) by the date of the August, 1996 Omnibus hearing. Bales asserts that the State only filed its notice after the trial. Bales argues that because the State's notice was procedurally invalid, the notice should be deemed void. The State responds that Bales never objected to the procedural adequacy of the State's notice and that Bales has therefore failed to make a timely objection. Further, the State argues that because Bales failed to object, the District Court was "denied the opportunity to consider whether the State's failure to comply . . . could be excused for good cause." Section 46-13-108, MCA, provides in pertinent part that "*[e]xcept for good cause shown*, if the

prosecution seeks treatment of the accused as a persistent felony offender, notice of that fact must be given at or before the omnibus hearing pursuant to 46-13-110." Section 46-13-108(1), MCA (emphasis added).

¶ We begin by reviewing the pertinent record. In the Omnibus hearing memorandum filed August 26, 1996, the State indicated that it would file its notice by August 30, 1996. Thereafter, the parties entered a plea agreement that made no mention of enhanced punishment of Bales as a persistent felony offender. In February, 1997 the District Court rejected the plea agreement and the State declared that if Bales withdrew his guilty plea, "the notice of intent to increase punishment would be back in effect." Bales withdrew his guilty plea. In May, 1997, following Bales' trial, the State filed its notice. The District Court apparently invited the parties to brief the State's notice. In his responsive brief, however, Bales did not object to the procedural adequacy of the State's notice.

¶ We conclude that Bales failed to preserve this issue for review. The record shows that Bales did not raise this issue below. Because Bales did not raise the timeliness of the State's notice, the District Court was not afforded the opportunity to address whether there was "good cause" under § 46-13-108, MCA, for the State's failure to give its notice before or at the omnibus hearing. Further, the rule is well established that we do not consider issues raised for the first time on appeal. *See* Unified Industries, Inc. v. Easeley, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15.

¶ 3. Whether the State's seeking a persistent felony offender designation for Bales was prosecutorial misconduct.

¶ Bales argues that the State punished him for withdrawing his guilty plea by invoking the persistent felony offender statute. The State responds that Bales did not raise this issue in District Court. We agree.

¶ Because the record establishes that Bales did not object on this ground, we conclude that Bales has failed to preserve this issue for review. As previously discussed, the rule is well established that we do not consider an issue raised for the first time on appeal. *See Easeley*, ¶ 15.

¶ 4. Whether the District Court erred in concluding that Bales is a persistent felony offender.

¶ In seeking a persistent felony offender designation for Bales, the State relied on his May, 1991 conviction for Possession of a Concealed Weapon. The parties agree that Bales was placed on a five-year suspended sentence for his conviction of Possession of a Concealed Weapon in May, 1991. In April, 1994, Bales' suspended sentence was revoked. Bales was committed to the Department of Corrections and placed in a prerelease center. In September, 1994 Bales was paroled from the prerelease center. Following Bales' trial, the District Court concluded that he is a persistent felony offender.

¶ Section 46-18-501, MCA, provides:

> **46-18-501. Definition of a persistent felony offender**. A "persistent felony offender" is an offender who has previously been convicted of a felony and who is presently being sentenced for a second felony committed on a different occasion than the first. An offender is considered to have been previously convicted of a felony if:
>
> (1) the previous felony conviction was for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could have been imposed;
>
> (2) less than 5 years have elapsed between the commission of the present offense and either:
>
> (a) the previous felony conviction; or
>
> (b) the offender's release on parole or otherwise *from prison or other commitment imposed as a result of the previous felony conviction*; and
>
> (3) the offender has not been pardoned on the ground of innocence and the conviction has not been set aside in a postconviction hearing.

Section 46-18-501, MCA (emphasis added).

¶ Bales argues that because he was "permitted to leave the [prerelease] center unsupervised on a daily basis" and free to victimize society, his status as an inmate of a prerelease center was not a commitment or "confinement by a court" under § 46-18-501(2)(b), MCA. Relying on this Court's decision in State v. Smith (1988), 232 Mont. 156, 755 P.2d 569, Bales argues that the District Court therefore erred in concluding that he is a

persistent felony offender.

¶ The State responds that Bales' release on parole from the prerelease center in 1994 was a release from an "other commitment" under § 46-18-501, MCA. The State argues further that because fewer than five years elapsed between Bales' release on parole and his conviction for the present crime, the District Court correctly concluded that Bales is a persistent felony offender.

¶ The District Court's determination that Bales is a persistent felony offender involves a question of law. State v. Montoya, 1999 MT 180, ¶ 16, 983 P.2d 937, ¶ 16, 56 St.Rep. 706, ¶ 16. We review a trial court's conclusions of law *de novo* to determine whether they are correct. Zimmerman v. Connor, 1998 MT 131, ¶ 7, 289 Mont. 148, ¶ 7, 958 P.2d 1195, ¶ 7. Further, we review "criminal sentence[s] only for legality (i.e., whether the sentence is within the parameters provided by statute)." *Montoya*, ¶ 15.

¶ In *Smith*, the Court determined that the defendant's probation from a previous felony was not a commitment under § 46-18-501(2)(b), MCA, and concluded:

> the plain meaning of the word "commitment" reveals that the period of commitment begins when the defendant is handed over to law enforcement personnel for confinement, and our analysis need not proceed further because the plain meaning of the word controls its interpretation. However, our resolution of this issue is also supported by the apparent purpose of employing the term "other commitment" for initiating the period of time between convictions. That intent, as demonstrated by the other event which initiates the five year period in this subsection; release from prison, is to have the time start to run *when the habitual offender is once again free, if he or she chooses, to victimize society.*

¶ *Smith*, 232 Mont. at 161-62, 755 P.2d at 572 (emphasis added). However, in *Smith* the Court did not address whether an inmate's time in a prerelease center was a commitment under § 46-18-501(2)(b), MCA.

¶ We have previously recognized that confinement in a prerelease center is an official detention under § 45-7-306, MCA, which defines the offense of escape. *See* State v. Chandler (1996), 277 Mont. 476, 480, 922 P.2d 1164, 1166 (concluding placement at a prerelease center rendered defendant "subject to official detention" under § 45-7-306,

MCA). We note, moreover, that § 45-7-306, MCA, provides that "[o]fficial detention does *not* include supervision of a person on probation or parole." Section 45-7-306(1)(b), MCA (emphasis added). Thus, the legislature has clearly signaled that confinement in a prerelease center has a status that is legally distinct from that of parole or probation.

¶ In *Montoya*, we addressed whether a defendant's release on parole from a prerelease center triggered the five-year period under § 46-18-501(2), MCA. We concluded that "the date on which a defendant is released on parole from any sort of 'confinement' for the previous felony conviction triggers the commencement of the five-year period of § 46-18-501(2)(b), MCA." *Montoya*, ¶ 25. Further, we characterized as dictum the *Smith* Court's determination that the five-year period begins when " 'the habitual offender is once again free, if he or she chooses, to victimize society.' " *Montoya*, ¶¶ 23-24 (citation omitted).

¶ In the present case Bales, like the defendant in *Montoya*, was released on parole from confinement in a prerelease center, thereby triggering the five-year period under § 46-18-501(2)(b), MCA. Because Bales' release on parole occurred less than five years before the offense in the present case, we hold that the District Court did not err in concluding that Bales is a persistent felony offender.

I. ¶ Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ JIM REGNIER

No

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.