Justice Ingrid Gustafson delivered the Opinion of the Court.
***385 ¶1 William John Nordholm (Nordholm) appeals following his convictions for felony aggravated *801 kidnapping and misdemeanor partner family member assault (PFMA), after a jury trial in the Third Judicial District Court, Anaconda-Deer Lodge County, in October 2016. We reverse and remand for a new trial.
¶2 We restate the issue on appeal as follows:
Did the District Court commit reversible error by allowing the jury unrestricted access to view testimonial videos during its deliberations?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Late in the evening on December 19, 2015, and into the early morning hours of December 20, 2015, Nordholm and his girlfriend, Melinda Archuleta (Archuleta), went for a drive, stopping at various bars to drink. Around 2:00 a.m., the pair stopped at the Town Pump on the east side of Anaconda to get something to eat. Nordholm was driving, and both parties were intoxicated. Archuleta entered the Town Pump and purchased snacks. When Archuleta returned to the vehicle, the pair got into an argument over who would drive next. Nordholm was in the driver's seat, and Archuleta attempted to sit down in the driver's seat and have Nordholm move over, so she could drive. The two got in a brief fight, during which Nordholm pulled Archuleta's hair.
¶4 Archuleta briefly reentered the Town Pump to get away from Nordholm. Archuleta then returned to the vehicle and the fighting began again. Nordholm hit Archuleta and dragged her on the ground outside the vehicle. During this altercation, Archuleta lost her jacket. Archuleta then entered the Town Pump for a third time. Archuleta informed the convenience store clerk working at the time, Cindy Scheck (Scheck), that she had just been assaulted in the parking lot. While Archuleta was speaking with Scheck, Brenda Krattiter (Krattiter), who was working at the casino in the Town Pump, came over because she heard the commotion outside. Archuleta again stated that she had been assaulted outside. Nordholm then entered the Town ***386 Pump and attempted to get Archuleta to leave with him. Krattiter asked Nordholm to leave the store, but he refused. Krattiter went back to the casino and called 911.
¶5 Nordholm grabbed Archuleta and walked her backwards out of the Town Pump. Outside, Nordholm again dragged Archuleta on the ground towards the vehicle. Nordholm left Archuleta on the ground and attempted to walk behind the vehicle but slipped on a patch of ice. After Nordholm slipped on the ice, Archuleta got in the vehicle, locked the doors, and drove away. Nordholm then reentered the Town Pump and went to the bathroom. Police officer Kyle Staley (Officer Staley) arrived at the Town Pump shortly after and began speaking to Scheck about the incident. Nordholm walked behind Officer Staley, exited the store, and then tried to climb a fence behind the Town Pump. Police caught Nordholm as he was attempting to climb the fence and detained him. Nordholm was arrested for PFMA that night. Officer Staley spoke with Archuleta about the incident later, and Nordholm was ultimately charged with both aggravated kidnapping and PFMA.
¶6 In October 2016, Nordholm was tried before a jury in the District Court. Nordholm admitted guilt to the PFMA charge at trial. After the jury retired for deliberations on October 26, 2016, the District Court held a discussion with counsel for Nordholm and the State regarding what exhibits would be given to the jury. Specifically, the District Court and the parties discussed the playing of videos admitted as exhibits during trial. A total of eight videos were admitted during trial: State's Exhibit 2, a security video from the Town Pump cash register; State's Exhibit 3, a security video from the Town Pump's entrance; State's Exhibit 4, a security video from the Town Pump's parking lot; State's Exhibit 6, Officer Cody Hanson's body camera video of himself speaking with Nordholm; State's Exhibit 7, Officer Staley's body camera video of himself speaking with Nordholm, Scheck, and Krattiter; State's Exhibit 8, Officer Staley's body camera video of himself speaking with Scheck; State's Exhibit 9, Officer Staley's body camera video of himself speaking with Archuleta; and Defense Exhibit A, a body camera video of Archuleta being interviewed after a different incident.
*802 ¶7 Counsel for Nordholm suggested that if the jury did make a request to watch any of the videos during their deliberations, that the videos should then be watched in open court. The District Court stated that "I understand your concern, but I'll just, I'm tired so I'll just say all things considered, denied." All the videos were then given to the jury for their deliberations. The jury convicted Nordholm of both aggravated kidnapping and PFMA. Nordholm appeals.
***387 STANDARD OF REVIEW
¶8 We review a district court's decision on the evidence that may be taken into the jury room during deliberations for an abuse of discretion. State v. Stout , 2010 MT 137, ¶ 29, 356 Mont. 468, 237 P.3d 37 (citing State v. Bales , 1999 MT 334, ¶ 24, 297 Mont. 402, 994 P.2d 17 ). A district court abuses its discretion if it acts arbitrarily, unreasonably, or without employing conscientious judgment, resulting in substantial injustice. State v. Hart , 2009 MT 268, ¶ 9, 352 Mont. 92, 214 P.3d 1273.
DISCUSSION
¶9 Did the District Court commit reversible error by allowing the jury unrestricted access to view testimonial videos during its deliberations?
¶10 "Upon retiring for deliberation, the jurors may take with them ... all exhibits that have been received as evidence in the cause that in the opinion of the court will be necessary." Section 46-16-504, MCA. We have further "recognized the common law rule against submission of testimonial materials to the jury for unsupervised and unrestricted review." Stout , ¶ 29 (internal quotations and citation omitted). The common law rule applies to both materials sent with the jury at the start of deliberations and requests from the jury to re-hear testimony as provided in § 46-16-503(2), MCA. Stout , ¶ 29 (citing Bales , ¶ 23). "Adherence to this rule prevents the jury from giving undue weight to one witness's statements to the exclusion of the evidence presented by other witnesses." Hart , ¶ 34 (citing Bales , ¶¶ 19-20).
¶11 In this case, the jury made no requests to view testimonial materials. The videos admitted into evidence during trial were simply given to the jury by the District Court for unsupervised and unrestricted review at the start of their deliberations. Nordholm contends that State's Exhibits 6, 7, 8, and 9 all contain testimonial evidence and therefore the District Court abused its discretion by allowing the jury unsupervised review of these videos.[1] The State argues that Exhibit 6 does not contain testimonial evidence, but concedes that Exhibits 7, 8, and 9 all contain testimonial evidence and therefore the District Court abused its discretion by allowing the jury unsupervised review of these videos. The State argues that allowing the jury unsupervised access to these videos was "harmless error," and reversal is not warranted.
***388 ¶12 The District Court allowing the jury unsupervised access to view the videos at issue in this case during its deliberations was "trial error." Hart , ¶ 35. In order to prove that this error was harmless, the State must demonstrate that there is "no reasonable possibility" that the unsupervised review of testimonial videos might have contributed to Nordholm's conviction. State v. Van Kirk , 2001 MT 184, ¶ 47, 306 Mont. 215, 32 P.3d 735.
¶13 The State argues that the evidence on the videos "did not unduly contribute to the aggravated kidnapping conviction because other evidence that was introduced at trial proved the same facts as in the videos." We are not persuaded by this argument, because the purpose of the common law prohibition on submission of testimonial material to a jury during its deliberations is to prevent the jury from "giving undue weight" to such testimonial evidence. Hart , ¶ 34. Unsupervised, the jury could repeatedly view the statements made by Nordholm, Scheck, Krattiter, and Archuleta on the videos. The testimony given at trial, including *803 statements made during cross-examination, was limited to what the jury remembered. The State's harmless error arguments regarding the qualitative effect of the videos ultimately does not reach the true issue in this case-the unsupervised review of the videos. It may well be true that other evidence presented at trial proved at least some of the same facts as those in the videos, but the qualitative effect of the jury's review of the videos is both unknown and unknowable because they were given unsupervised access to view the videos as many times as they wished. Indeed, it can never be known if the jury would have even asked to view the videos during deliberations in this case as the District Court simply gave them to the jury without being asked.
¶14 The common law rule regarding the submission of testimonial evidence to juries during deliberation is in place to prevent a jury from placing undue emphasis on that evidence to the exclusion of other evidence. In this case, as the State concedes, the District Court abused its discretion by allowing the jury unsupervised access to review testimonial evidence. The State cannot prove that there is "no reasonable possibility" that the jury's review of these testimonial videos contributed to Nordholm's aggravated kidnapping conviction because the jury had unsupervised access to them. Van Kirk , ¶ 47. The jury could repeatedly play the videos at issue and therefore give them "undue emphasis." Hart , ¶ 34. At trial, a jury hears testimony from witnesses on the stand. During deliberations, a jury must rely on its collective memory to assess the testimony of those witnesses-a transcript of witness testimony is not provided. It would create a ***389 fundamental imbalance to allow juries to review testimonial video evidence during deliberations when a transcript of the testimony given by witnesses at trial is not, and should not, be given to the jury to review during deliberations. On rare occasions, it may be appropriate for a jury to review testimonial video evidence during their deliberations based on an unusual or unique circumstance. Such a review, however, must be supervised by the district court, to prevent the very problems at issue here.[2] Because we cannot find that the District Court's error in this case was harmless, it is appropriate to remand this case to the District Court for a new trial.
CONCLUSION
¶15 The District Court abused its discretion when it allowed the jury unrestricted access to view testimonial videos during its deliberations. The District Court's error was not harmless.
¶16 Reversed and remanded for a new trial.
We concur:
MIKE McGRATH, C.J.
JIM RICE, J.
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.

Nordholm also concedes that Defendant's Exhibit A also contains testimonial evidence, but he does not appeal on this issue.

It is not necessary to determine whether Exhibit 6 ultimately contained testimonial evidence because reversal is warranted due to the jury's unsupervised access to Exhibits 7, 8, and 9-which the State concedes contain testimonial evidence.