No. 82-77

IN THE SURPEME COURT OF THE STATE OF MONTANA

1982

IN THE MATTER OF M.L.Y. AND M.Y.,
Youth in need of care.
---------------------------
IN RE THE MARRIAGE OF
MARVIN LEO YOTTER,

             Petitioner and Respondent,

  -vs-

THERESA NEIL YOTTER WILLIAMSON,

             Respondent and Appellant.


Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, The Honorable
Diane G. Barz, Judge presiding.

Counsel of Record:

    For Appellant:

           Jones, Jones & Work; Blair Jones, Billings, Montana

    For Respondent:

           Nye Law Firm; Jerrold L. Nye, Billings, Montana
           Harold Hanser, County Attorney, Billings, Montana
           Olsen, Christensen & Gannett; Damon L. Gannett,
           Billings, Montana


Submitted on Briefs:  October 7, 1982

Decided:  December 16, 1982

Filed: DEC 16 1982

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal was taken from a judgment of the District Court of the Thirteenth Judicial District declaring the custody of M.L.Y. and M.Y. Due to procedural error we must vacate the judgment of the District Court.

The underlying consolidated actions were the latest of a series of disputes between the husband and wife since their divorce in 1978. At the time of divorce the parties entered into a custody and support agreement. This agreement was incorporated in the decree of dissolution. Theresa was to be the custodial parent of the two children. Although the decree of dissolution granted reasonable visitation, it appears that Theresa "continued to interfere with and block visitation attempts made by Marvin . . ."

In August 1979, Marvin traveled to South Dakota, the residence of Theresa and the children, and filed a motion for change of custody. A hearing was held and a visitation agreement was entered into; unfortunately, the parties continued to fight over visitation rights. In early 1980, Theresa moved to Arizona without informing Marvin of her whereabouts. Marvin later located his ex-wife and children and went to Arizona. On May 27, 1980, he entered into another visitation agreement with Theresa; he would take the children to Montana for the summer and would allow the children to return to Arizona on or about August 15. Marvin returned to Montana with the children and filed a motion for change of custody in District Court of Yellowstone County on July 8. An amended motion for change of custody was filed on August 5. On August 28, District Judge Charles Luedke denied Marvin's amended motion without hearing. Marvin disputed Judge Luedke's order denying his motion and filed a notice of appeal on September 9. However, on September 26, Marvin filed a document entitled "Withdrawal of Appeal."

During this time period, Theresa came to Montana to regain custody of M.L.Y. and M.Y. Theresa was not able to find the

- 2 -

children. Marvin, intending to frustrate Theresa's efforts to regain custody, had sent the children to Utah with his present wife. Twice during the month of September Marvin was arrested for custodial interference. On September 30, the State became involved by filing a petition for temporary investigative authority and protective services. The District Court then ordered the children placed in foster care pending final disposition.

On November 20, Marvin was successful in persuading the court to order the children removed from foster care and placed in his custody. On the same day, Marvin filed a petition for change of custody and a motion to consolidate the dependency and neglect proceedings with his custody action. On that day Judge Luedke ordered consolidation.

A lengthy trial ensued. A final order was entered on November 9, 1981. The Department of Social and Rehabilitation Services was granted legal custody of the children until age eighteen, and Marvin was granted guardianship and physical custody until age eighteen. Theresa was granted reasonable rights of visitation. On December 8, 1981, Theresa filed a notice of appeal.

The appellant has raised several issues concerning various actions of the District Court in relation to jurisdiction and the consolidation of the custody action and the dependency and neglect action. First, appellant claims the District Court did not have jurisdiction over the custody action since the father had filed a notice of appeal, thus transferring jurisdiction to this Court. Second, notwithstanding the jurisdictional argument, appellant contends it was error to consolidate the two causes because to do so was prejudicial; "[t]he custodial parent should not be required to defend against the State of Montana and the noncustodial parent seeking custody in one and the same action." We need only address the first issue.

Appellant argues that since a notice of appeal was filed by

- 3 -

her husband from dismissal of his amended motion for change of custody, the jurisdiction over the parties and the subject matter had passed to this Court, leaving the District Court without authority to assert jurisdiction over the subsequent petition for change of custody. At this time we must restate the chronology of various documents:

1. On August 28, 1980, the District Court denied the father's amended motion for change of custody.

2. On September 9, 1980, the father filed a notice of appeal.

3. On September 26, 1980, the father filed with the District Court a document entitled "Withdrawal of Appeal."

4. On November 20, 1980, the father filed a petition for change of custody and a motion to consolidate his petition with the dependency and neglect action filed by the Yellowstone County Attorney's Office. On the same day the District Court ordered consolidation.

Initially, we note that the husband's notice of appeal was timely; it was filed within thirty days of the District Court's denial of the motion for change of custody. See Rule 5, M.R.App.Civ.P. Such a timely filing vests this Court with jurisdiction. In Julian v. Buckley (1981), ____ Mont. ____, ____, 625 P.2d 526, 528, 38 St.Rep. 128, 130, we stated: "[s]ince 1954 it has been an established rule in Montana that when a notice of appeal has been filed, jurisdiction over the parties to the controversy and subject matter passes from the District Court and vests in the Supreme Court."

It is argued that the appeal was never perfected because the fee was not paid nor was the record transferred, and as a consequence, jurisdiction was never acquired by this Court. However, the proponents of this argument overlook a statement in the comments to Rule 4, M.R.App.Civ.P.: "[n]othing other than the filing of a notice of appeal in the District Court is required for the perfecting of an appeal." Annotations to MCA,

- 4 -

Vol. 3, Title 25, p. 593. On September 9, 1980, the date the notice of appeal was filed with the District Court, this Court's jurisdiction was invoked.

On September 26, 1980, the father filed a document with the District Court indicating his intentions to withdraw his appeal. The document simply said "NOW COMES the Petitioner and withdraws his appeal herein. DATED this 26th day of September, 1980." Rule 36, M.R.App.Civ.P. states that "[i]f an appeal has not been docketed the appeal may be dismissed by the court from which the appeal was taken . . . upon motion and notice by the appellant." Nothing in the record indicates either motion or notice. We must conclude that the father's document entitled "Withdrawal of Appeal" was not sufficient to divest this Court of its jurisdiction. "Whether or not the appellant . . . will be permitted to dismiss or withdraw his appeal . . . is a matter within the discretion of the court, and not a matter of right on the part of the appellant . . ." 5 Am.Jur.2d Appeal and Error Section 920 (1962).

The rules of appellate civil procedure must be followed, here they were not. Consequently, when the father filed a petition for change of custody on November 20, 1980, the District Court was without jurisdiction and it was error to enter an order of consolidation.

Montana law is clear, once a notice of appeal is filed, jurisdiction over the subject matter vests in the Supreme Court and it "becomes the Supreme Court's duty to maintain the status quo of the parties until the controversy can be determined." Julian, _____ Mont. at _____, 625 P.2d at 528, 38 St.Rep. at 130.

We vacate the orders of the District Court dated August 24, 1981, and November 9, 1981. In the interests of minimizing harm to the children, we reinstate the order of the court dated November 20, 1980, placing the children in temporary custody of the natural father. If the state or if the father choose to reinstitute proceedings, they may do so within thirty days from

the date this decision is handed down, without prejudice. However, if no proceedings are initiated, the District Court must uphold the mother's custody rights by ordering the children returned to her care.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices