No. 90-575

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

THE VILLAGE BANK, a banking association,

Plaintiff and Respondent,

-v-

LEO J. CLOUTIER, RUTH M. CLOUTIER,
E. KITS SMITH, and BRIAN CLOUTIER,

Defendants, Counterclaimants and Appellants.

FILED

JUN 11 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chris Christensen; Kalispell, Montana

For Respondent:

Ward E. Taleff; Alexander, Baucus & Linnell; Great
Falls, Montana

Submitted on briefs: March 7, 1991

Decided: June 11, 1991

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Defendants, Leo Cloutier, Ruth Cloutier, Brian Cloutier and E. Kits Smith (hereinafter Cloutiers) appeal from an order of the Eighth Judicial District, Cascade County granting summary judgment in favor of plaintiff, Village Bank. We reverse and remand.

The sole issue we find necessary for review is:

Whether the District Court erred in granting summary judgment in favor of Village Bank.

Over ninety percent of the stock of Treasure State Bank of Glasgow, a Montana State Banking Corporation, was owned by a group of ten persons, that included James G. Edmiston, Roger W. Kornder and David A. Anderson. This same group of individuals owned the majority of stock of Intermountain Bancorporation which is a bank holding company that owns several banks located within this state.

In 1984, James Edmiston informed the Cloutiers that he and several other people owned the Treasure State Bank of Glasgow. He further informed the Cloutiers that due to certain banking regulations, the owners had to divest themselves of their stock interest in the Treasure State Bank. He then offered to sell the stock of Treasure State Bank to the Cloutiers for the sum of $1,835,000.

In order to assist the Cloutiers in obtaining funding for this transaction, Edmiston devised a rather complicated plan. He told the Cloutiers that $1,500,000 could be borrowed from the First National Bank of St. Paul, Minnesota. Apparently this sum could

be obtained by executing a note that was secured by the stock of Treasure State Bank. The remaining $335,000 could be obtained from banks owned by the Intermountain Bancorporation.

According to the Cloutiers, this entire scheme was represented as virtually risk-free on their part. They maintain that they were told that the dividends from Treasure State Bank stock would be adequate to repay the loans. They further state that they were given up to ten years to repay the $335,000 borrowed through the Intermountain Bancorporation and that this loan could be renewed annually with only interest being paid.

In reliance upon these representations, the Cloutiers purchased the stock of Treasure State Bank. The funds necessary to complete the purchase were advanced by one of the banks owned by Intermountain Bancorporation (Columbia Falls Bank). Notes were executed and $33,245.00 was loaned to Brian Cloutier, $33,245.00 was loaned to Leo and Ruth Cloutier and $32,000.00 was loaned to E. Kits Smith. These defendants never actually received these funds; however they did receive the stock which was purchased with the money. The funds were distributed to the sellers of Treasure State Bank.

After these transactions were completed, the Cloutiers discovered that the solvency of the bank was misrepresented. According to their brief, Treasure State Bank held $400,000 worth of "bad loans." As a result of these "bad loans", they did not obtain any dividends from Treasure State Bank stock and could not repay their loans.

3

On August 20, 1987, the then present owner of the notes, the original Village Bank, which was owned by Intermountain Bancorporation, sued the Cloutiers to collect upon the promissory notes obtained from the Bank of Columbia Falls, the original payee, which was also owned by Intermountain Bancorporation. Apparently these notes were obtained by Village Bank, for consideration, from the Bank of Columbia Falls.

On April 22, 1988, the original Village Bank was declared insolvent. The bank was closed and the Montana Department of Commerce took possession of its assets. Eventually the Federal Deposit Insurance Corporation was appointed as liquidating agent of the bank.

Subsequently a newly created bank acquired the promissory notes as an asset from FDIC. This new bank is named the Village Bank of Great Falls. It is not related in any manner to the original Village Bank, which was declared insolvent.

The Village Bank of Great Falls continued to press the lawsuit to collect on the promissory notes. The Cloutiers filed an answer and counterclaim alleging failure of consideration, fraud and misrepresentation, breach of contract and breach of the covenant of good faith and fair dealing. On April 28, 1989, the Cloutiers filed a motion for leave to file an amended answer and third party complaint. In their proposed amended answer, the Cloutiers raised the defenses of fraud, that the Village Bank of Great Falls was not a holder in due course and therefore subject to all claims or defenses available in common contract actions, failure of

4

consideration, illegality, laches, equitable estoppel, breach of contract and breach of the covenant of good faith and fair dealing.

According to the Cloutiers the District Court did not rule upon their motion to amend. Instead it granted summary judgment in favor of Village Bank of Great Falls on September 14, 1990, and in effect denied the motion to amend. From this order the Cloutiers appeal.

As stated above, the District Court granted summary judgment and entered judgment against the Cloutiers without allowing them to amend their complaint. Montana follows the general rule that leave to amend pleadings should be freely given when justice so requires. See State Highway Commission v. Schmidt (1966), 48 Mont. 316, 420 P.2d 153. Refusal to permit an amendment offered at an opportune time and which should be made in the furtherance of justice is an abuse of discretion. State ex rel. Gold Creek Mining Co. v. District Court (1935), 99 Mont. 33, 43 P.2d 249.

In the case now before us, it is clear that the District Court abused its discretion by not allowing the Cloutiers to amend their complaint. Many of the defenses that the Cloutiers sought to assert had previously been included in their original answer as counterclaims. The amendments sought only to redesignate these counterclaims as defenses. The other amendments, such as illegality and the fact that Village Bank of Great Falls is not a holder in due course, appear to be appropriate. Their inclusion would therefore result in little if any prejudice to the plaintiffs.

5

In their amended complaint, the Cloutiers also sought to file a third party complaint against Intermountain Bancorporation, its member banks and shareholders. Rule 19, M.R.Civ.P., contemplates the liberal use of joinder. Rule 19(a), M.R.Civ.P., makes it clear that whenever feasible, persons materially interested in the subject of an action be joined so that they may be heard and a complete disposition of the case be made.

Here, the Cloutiers maintain that they were induced to enter into the financing arrangement through fraudulent activity perpetrated by the shareholders and officers of Intermountain Bancorporation and its member banks. These issues are an integral part of the lawsuit asserted against the defendants. Its resolution could prevent a multiplicity of lawsuits surrounding one transaction and would therefore further the goal of judicial economy. We make no ruling on their validity. However, we hold that the issues arising out of the amendments were not addressed by the court before granting summary judgment. Accordingly the court's order of summary judgment should be reversed.

While this appeal was pending, the parites submitted supplemental briefing on the issue of whether the Village Bank of Great Falls, as a purchaser from the FDIC of the promissory notes, is a holder in due course and therefore is not subject to the defenses and claims asserted by the Cloutiers. This has not been considered by the District Court. It would be inappropriate for us to rule on this issue considering the record before us and its possible further factual development.

We reverse the order of summary judgment and remand for further proceedings in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices