FILED

11/25/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0149

DA 25-0149

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT

LINDSAY BURNS BARBIER, individually,
and on behalf of the H.W. BURNS FAMILY
LLC; S.B.; and B.B.,

Plaintiffs and Appellants,

v.

CAMERON H. BURNS; and H.W. BURNS
FAMILY LLC,

Defendants and Appellees,

H.W. BURNS FAMILY LLC,

Counterclaim Plaintiff and Appellee,

v.

LINDSAY BURNS BARBIER; S.B.; and B.B.,

Counterclaim Defendants and Appellants.

APPEAL FROM:   District Court of the Sixth Judicial District,
In and For the County of Sweet Grass, Cause No. DV-2021-49
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

For Appellants Lindsay Burns Barbier, S.B., and B.B.:

Stephanie Baucus, Jordan W. FitzGerald, Moulton Bellingham PC,
Billings, Montana

For Appellee Cameron H. Burns:

J. Devlan Geddes, Goetz, Geddes & Gardner, P.C., Bozeman, Montana

For Appellee H.W. Burns Family, LLC:

Margaret C. Weamer, Amy C. McNulty, Tarlow Stonecipher Weamer & Kelly, PLLC, Bozeman, Montana

Submitted on Briefs:  October 15, 2025

Decided:  November 25, 2025

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1     Lindsay Burns Barbier (Lindsay), on behalf of herself, her minor children (S.B. and B.B.), and as a derivative plaintiff for H.W. Burns Family LLC (the LLC), appeals the October and November 2024 orders of the Montana Sixth Judicial District Court, Sweet Grass County, granting summary judgment to her brother, Cameron Burns (Cameron) and the LLC (as a defendant), and ordering her to pay costs and fees for deposing a non-party hybrid witness.  We address the following restated issues:

1. *Did the District Court erroneously grant summary judgment to Cameron Burns and H.W. Burns Family LLC regarding interpretation of the Operating Agreement and conversion of the LLC to a perpetual company?*

2. *Did the District Court erroneously require joinder of H.W. Burns Family LLC as a defendant?*

3. *Did the District Court erroneously order Lindsay Barbier to pay professional and attorney fees for a non-party hybrid witness?*

We affirm in part and reverse in part with instruction.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     In 1994, siblings Lindsay, Cameron, and Seth Burns (Seth), along with their father Horatio Burns (Horatio), established the H.W. Burns Family LLC by filing Articles of Organization with Montana's Secretary of State.  The LLC was created as a 30-year term company with a dissolution date no later than December 31, 2024.

¶3     In 2004, the four members executed an Operating Agreement (OA), replacing a prior 1994 agreement.  As pertinent, the OA provides that:

§ 1.d     The LLC is a term company to dissolve no later than December 31, 2024.

3

§ 6.k    "[N]o Member . . . shall, singularly or together, take any of the following . . . actions without the approval of Members ow[n]ing at least 67% Ownership Percentages":

    i.    "[t]he amendment of the operating agreement under 35-8-109";

    iii.   "[a]n amendment to the articles of organization under 35-8-203"; and

    x.    "[w]aiver of the right to have the [LLC's] business wound up and the company terminated under 35-8-901."

§ 13.j   "The Members may amend this Agreement . . . upon execution of a written amendment signed by all of the Members."

§ 9.a.i  "A Member ceases to be a Member of the [LLC] upon . . . [t]he [LLC's] receiving notice of the Member's express will to withdraw."

§ 2.e    "Member" means a person who has been admitted to membership, executed the OA as a member, and is "not dissociated from" the LLC.

§ 2.i    "Ownership Percentage" means "a Member's designated share of the profits, losses and distributions" of the LLC subject to change only by Members' written agreement.

¶4    In July 2015, Seth provided the LLC with written notice of his intent to withdraw as a Member. The remaining Members elected to continue the LLC and buy Seth's interest pursuant to the OA. Prior to finalizing the purchase of Seth's interest, the remaining Members voted on November 14, 2015, to convert the LLC to a perpetual-term entity. They memorialized this vote in minutes that read:

> A motion was made by Horatio to extend the life of The LLC from 2024 to perpetual with no expiration. Cameron seconded. Horatio voted Yes, Cameron voted Yes, Lindsay voted No.

Three days later, on November 17, 2015, Horatio filed Articles of Amendment converting the LLC to a perpetual term in accord with the November 14, 2015 vote.

4

¶5 Horatio died in August 2018. Cameron became the personal representative of Horatio's estate, thereby assuming control of Horatio's LLC interest. In December 2021, Lindsay initiated a district court action asserting claims against Cameron, in his individual capacity, on behalf of herself and her minor children, and derivative claims on behalf of the LLC, to enforce the OA and force dissolution in December 2024. She sought declaratory judgment that OA § 13.j required unanimous member consent to amendment and therefore the November 2015 vote converting the LLC to a perpetual entity was ineffective.[1]

¶6 Cameron filed a partial motion to dismiss, arguing that Lindsay's derivative claims were improper because they were claims in her personal interest against the LLC, i.e., she claimed the company decision to convert to a perpetual term meant she would be penalized for early withdrawal from membership. The District Court denied Cameron's motion.

¶7 Afterward, in December 2022, Cameron filed a motion to join the LLC as a defendant. Lindsay opposed, claiming that Cameron's motion was untimely under the court's scheduling order and that the LLC was already a party through her derivative claims. The District Court ordered Lindsay to join the LLC as a defendant to her individual and derivative claims for declaratory relief pursuant to § 27-8-301, MCA, and M. R. Civ. P. 19. Once joined, the LLC answered Lindsay's complaint and filed a

---

[1] Flowing from these assertions, Lindsay also asserted claims for breach of contract and specific performance. These claims were later mooted by the District Court's order on the parties' cross-motions for summary judgment and are not at issue on appeal.

counterclaim for declaratory judgment that its term was perpetual and would not expire in 2024.

¶8     During discovery, Lindsay disclosed her retained expert witness. She also disclosed that she planned to call a former LLC appraiser, Kim Bennett, as a potential hybrid witness. In turn, Cameron and the LLC also identified Bennett as a possible hybrid witness who could be called "to rebut" Lindsay's retained expert's testimony. Lindsay scheduled a deposition through Bennett's counsel and then subpoenaed Bennett on June 7, 2024, sending a $10 check for the statutory witness fee with the subpoena. Bennett was deposed on June 27, 2024. After first reaching out to Lindsay about compensation, who declined, Bennett asked the District Court to order payment of $4,410 in "professional" and attorney fees, leaving it to the court's discretion which party must pay. The LLC responded that Lindsay was responsible because she deposed Bennett. Lindsay responded that she only deposed Bennett to investigate possible "rebuttal" testimony and that Bennett was required to challenge the subpoena and witness compensation amount under M. R. Civ. P. 45 before the deposition, not after. The District Court ordered Lindsay to pay Bennett's requested fees.

¶9     Following discovery, the parties filed motions for summary judgment on interpretation of the OA and the LLC's term status. Cameron and the LLC argued that the November 2015 vote was authorized by OA § 6.k.i, and Cameron and Horatio's votes met the 67% threshold required to change the LLC to a perpetual-term entity. Lindsay argued that § 13.j required unanimous member agreement to amend the OA and thus conflicted with § 6.k.i, creating an ambiguity. She asked the court to construe the OA to require

6

unanimous consent and offered extrinsic evidence to support that interpretation. Lindsay also argued that, even if the court construed § 6.k.i as the controlling amendment provision, Horatio and Cameron's votes were not sufficient to meet the 67% voting threshold because Seth's distribution interest remained part of the ownership percentages calculus until formally sold in 2016.

¶10 After oral argument, the District Court granted summary judgment to Cameron and the LLC, concluding that the OA unambiguously provided for alternative methods of amendment, which did not conflict; Seth was no longer a member after his July 2015 notice of withdrawal and his interest was thus not part of the voting threshold calculus; and the November 2015 vote effectively amended the LLC to a perpetual-term entity. Lindsay appeals the court's decisions on summary judgment and its order that she pay Bennett $4,410 in fees.

## STANDARD OF REVIEW

¶11 We review the grant or denial of summary judgment de novo by applying M. R. Civ. P. 56. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3).

¶12 The construction and interpretation of a written agreement, and whether an ambiguity exists, are questions of law subject to de novo review for correctness. *Eschenbacher v. Anderson*, 2001 MT 206, ¶ 21, 306 Mont. 321, 34 P.3d 87; *Gabert v. Seaman*, 2025 MT 198, ¶ 12, 424 Mont. 9, 574 P.3d 920.

7

¶13 A district court's decision whether to join a party is discretionary and thus reversible only for an abuse of discretion. *John Alexander Ethen Trust Agreement v. River Res. Outfitters, LLC*, 2011 MT 143, ¶ 49, 361 Mont. 57, 256 P.3d 913; *Williams v. Bd. of Cnty. Comm'rs*, 2013 MT 243, ¶¶ 25-35, 371 Mont. 356, 308 P.3d 88. A court abuses its discretion if it acts arbitrarily, unreasonably, or without employing conscientious judgment, resulting in substantial injustice. *State v. Nordholm*, 2019 MT 165, ¶ 8, 396 Mont. 384, 445 P.3d 799.

¶14 Finally, whether legal authority exists to award costs and attorney fees is a legal question reviewed for correctness. *Mungas v. Great Falls Clinic, LLP*, 2009 MT 426, ¶ 42, 354 Mont. 50, 221 P.3d 1230. Where legal authority exists to award costs and fees, we review any award for an abuse of discretion. *Apecella v. Overman*, 2025 MT 219, ¶ 28, 424 Mont. 202, 577 P.3d 133.

## DISCUSSION

¶15 *1. Did the District Court erroneously grant summary judgment to Cameron Burns and H.W. Burns Family LLC regarding interpretation of the Operating Agreement and conversion of the LLC to a perpetual company?*

¶16 Lindsay contends the District Court erred in concluding that the 2004 OA permitted amendment by a 67% supermajority and the November 2015 vote converted the LLC to a perpetual-term entity. She claims that OA § 6.k.i and § 13.j contradict each other, creating an ambiguity requiring extrinsic evidence to resolve, and should be construed to require OA amendment only upon unanimous member agreement in writing. She argues the November 2015 vote was ineffective because it was not unanimous under § 13.j.

Alternatively, Lindsay argues that the vote was also ineffective under § 6.k.i because Cameron and Horatio did not meet the 67% voting threshold.

## A. 2004 Operating Agreement's Voting Threshold for Amendment

¶17 Courts must interpret contracts to give effect to the parties' mutual intention as it existed at the time of contracting, "so far as the same is ascertainable and lawful." Section 28-3-301, MCA. The parties' intention must be ascertained from the writing alone, if possible. Section 28-3-303, MCA; *see also* § 28-3-401, MCA (contract language must govern interpretation if "clear and explicit and does not involve an absurdity"). "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Section 28-3-202, MCA; *see also* § 28-3-201, MCA (a contract generally must receive an interpretation to "make it lawful, operative, definite, reasonable, and capable of being carried into effect"); § 1-4-101, MCA. Courts may not isolate particular phrases but instead must consider the entire instrument to ascertain the parties' intent. *Krajacich v. Great Falls Clinic, LLP*, 2012 MT 82, ¶ 13, 364 Mont. 455, 276 P.3d 922 (adding that contract terms "inconsistent with the general nature of the contract or the primary intention of the parties are to be rejected" (citing § 28-3-503, MCA)).

¶18 "Where a contract provision is clear and unambiguous, a court must apply the language as written." *Czajkowski v. Meyers*, 2007 MT 292, ¶ 21, 339 Mont. 503, 172 P.3d 94; *Morely v. Morely*, 2022 MT 12, ¶ 26, 407 Mont. 241, 502 P.3d 666 (plain text controls where unambiguous). An ambiguity exists where the language of a contract, as a whole, is subject to at least two "reasonable but conflicting meanings." *Reihl v. Cambridge Court*

*GF, LLC*, 2010 MT 28, ¶ 26, 355 Mont. 161, 226 P.3d 581 (citation omitted).  Mere party disagreement over meaning is not sufficient to create an ambiguity; rather, whether an ambiguity exists is determined objectively.  *Gabert*, ¶ 17; *Corporate Air v. Edwards Jet Ctr. Mont. Inc.*, 2008 MT 283, ¶¶ 30-32, 345 Mont. 336, 190 P.3d 1111.  When the contract language is ambiguous, intent becomes a question of fact, which may require consideration of extrinsic evidence.  *Corporate Air*, ¶ 32.  But even where extrinsic evidence is permitted, the contract language "remains the most important evidence of intention."  *Watters v. City of Billings*, 2019 MT 255, ¶ 22, 397 Mont. 428, 451 P.3d 60 (citation omitted).

¶19     We agree with the District Court that the 2004 OA unambiguously provides two valid and complementary pathways for amendment.  OA § 6.k.i provides for amendment of the OA by a 67% voting majority of members.  OA § 13.j provides that the OA "may" be amended "upon execution of a written amendment signed by all of the Members." Read in harmony, giving effect to each, these provisions allow for amendment upon (1) consent in writing where all members agree and (2) formal approval by a supermajority vote where members are not in agreement.  In short, § 13.j provides a consensus shortcut to formal meeting and voting requirements.[2]   The use of "may" in § 13.j indicates it is a permissive alternative,[3] aligned with the statutory default unanimity rule,

---

[2] OA § 7.b likewise provides that any action requiring a member vote "may be taken without a meeting, by resolutions unanimously approved and signed by the Members."  Again, reading the OA provisions in harmony, § 7.b supports interpretation of § 13.j as an alternative means to amend the OA, which "may" be achieved informally where the parties are in unanimous agreement.

[3] *See Dover Ranch v. County of Yellowstone*, 187 Mont. 276, 283, 609 P.2d 711, 714 (1980) (the "ordinary meaning" of "may" is permissive); *Kageco Orchards, LLC v. DOT*, 2023 MT 71, ¶ 23, 412 Mont. 45, 528 P.3d 1097 ("[t]he use of the word 'may' means that the decision to be made is discretionary").

§ 35-8-307(3), MCA.[4]   However, the default does not apply where the OA "provide[s] otherwise."  OA § 6.k, mirroring § 35-8-307(3), expressly "provides otherwise," i.e., that amendment of the OA and Articles of Organization, and waiver of the right to wind-up the LLC, is to be accomplished by a 67% majority vote.  Here, it is apparent the parties intended § 13.j to provide an alternative to § 6.k.i's formal voting requirements when members achieve consensus on amendment.  Reading the OA, as Lindsay proposes, to mandate unanimous consent for all amendments would nullify § 6.k, an impermissible interpretation.

¶20    Because these provisions may be read in harmony without conflict, the 2004 OA is not ambiguous.  Therefore, extrinsic evidence was not necessary to ascertain intent, and the District Court properly rejected it.  Lindsay contends that email correspondence from the LLC's attorney stating the November 2015 vote under § 6.k.i did not effectively amend the OA proves that § 13.j unanimity is the controlling rule.  However, even if considered, a lawyer's email description of the 2015 amendment process cannot override the OA's express text or lend interpretive meaning when the writing speaks for itself.  *See Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 20, 338 Mont. 41, 164 P.3d 851 ("the fact that the parties to a document, *or their attorneys*, have or suggest opposing interpretations" does not prove ambiguity (citation omitted, emphasis

---

[4] Section 35-8-307(3) says that, "[u]nless the articles of organization or the operating agreement provide otherwise," matters requiring unanimous member-consent include:  "(a) the amendment of the operating agreement under 35-8-109; . . . (c) an amendment to the articles of organization under 35-8-203; . . . [and] (j) a waiver of the right to have the company's business wound up and the company terminated under 35-8-901."

added)); *Watters*, ¶ 22 (even where extrinsic evidence is permitted, the contract language "remains the most important evidence of intention"). This is particularly true here, where the emails on which Lindsay relies—sent after the members executed the OA and reflecting counsel's understanding at that time—cannot alter the plain language that the members themselves adopted in § 6.k and § 13.j or manufacture ambiguity where the text, read as a whole, is reasonably susceptible to only one meaning.

¶21 We hold that the District Court correctly interpreted the 2004 OA to provide for complementary pathways to amendment under § 6.k.i and § 13.j.

### B. The 2015 Vote Validly Converted the LLC to a Perpetual Entity

¶22 Regarding amendment, the LLC members were not in unanimous agreement and so OA § 6.k controlled, requiring a 67% supermajority vote to change the LLC to a perpetual-term entity. Lindsay claims the November 2015 amendment was invalid because Cameron and Horatio's votes did not satisfy the 67% voting threshold. By Lindsay's calculations, in November 2015, the members' respective ownership shares were: Horatio at 28.58%; Cameron at 28.57%; Lindsay at 10.10%; Lindsay's minor children at 14.16%; and Seth at 18.59%. Thus, combined, Horatio and Cameron owned only 57.15% interest. But, for reasons explained below, Lindsay's formula conflates economic rights of a dissociated owner with governance rights of Members and would make a non-member's residual distribution interest an indefinite veto-power, which the OA and Montana statutes do not support.

**(1) The 67% Threshold—Effect of Seth's Dissociation**

¶23    OA § 2.e defines a "Member" as someone who is "not dissociated from" the LLC. OA § 9.a.i provides that a "Member ceases to be a Member" upon the LLC "receiving notice of the Member's express will to withdraw." For voting purposes under § 6.k, OA § 2.i defines "Ownership Percentage" as "a *Member's* designated share of the profits, losses and distributions." (Emphasis added.)

¶24    Similarly, Montana's Limited Liability Company Act provides that a "member" is someone "who has not dissociated from" the LLC. Section 35-8-102(21), MCA. "A member is dissociated from a limited liability company upon the company's having notice of the member's express will to withdraw." Section 35-8-803(1)(a), MCA. "Upon a member's dissociation from" an LLC, "the member's right to participate in the management and conduct of the company's business terminates . . . and the member ceases to be a member and must be treated the same as a transferee of a member." Section 35-8-805(2)(a), MCA; *see also* § 35-8-707, MCA (rights of a transferee).

¶25    Here, it is undisputed that, in July 2015, Seth formally notified the LLC he was withdrawing from membership. It is also undisputed that Seth did not participate in the November 14, 2015 vote to extend the LLC term. That is because, at that point, Seth was no longer an LLC "Member" and therefore no longer had any voting rights or "Ownership Percentage" for voting purposes under § 6.k.i. Pending the sale or disposition of his interest, Seth was to be treated only as a transferee of a distributional interest. As such, "Ownership Percentages" excluded Seth's distribution-only interest and the denominator for § 6.k voting was the sum of "Ownership Percentages" of the then-existing Members,

13

of which Cameron and Horatio exceeded 67%.[5]  Accordingly, the November 14, 2015 action to extend the LLC term was made with the required "approval of Members ow[n]ing at least 67% Ownership Percentages."

**(2) The Scope and Effect of the November 2015 Vote and Subsequent Filing**

¶26    The parties memorialized their November 14, 2015 vote "to extend the life of The LLC from 2024 to perpetual with no expiration" in LLC meeting minutes, which everyone agrees accurately reflect what took place that day.  Three days later, the LLC filed Articles of Amendment with the Secretary of State reflecting the change to a perpetual term.  The OA does not expressly require a separate writing to implement a § 6.k vote—the minutes and subsequent amended Articles filing, in context, were sufficient to do so.

¶27    While a contemporaneous formal amendment of OA § 1.d, providing for dissolution in 2024, would have eliminated textual disharmony, Montana law does not require a superfluous instrument where the OA already expressly permits amendment by supermajority and the Members voted to effect that change and then filed a conforming public instrument reflecting that vote.  Lindsay contends that the Articles govern only vis-à-vis the State, while the OA controls among Members.  That distinction, while accurate in the abstract, does not overcome § 6.k.i's express authorization to amend the

---

[5] Horatio and Cameron's combined 57.15% interest was 70% of the existing Member Ownership Percentages.  Lindsay acknowledged this fact in her December 2021 complaint, alleging that, "[o]ver [her] objection, Cameron and Horatio . . . , *representing 70% of the LLC's ownership interests*, voted in favor of" amending the LLC's term "at a meeting on November 14, 2015." (Emphasis added.)  Our conclusion that the November 2015 vote satisfied § 6.k's 67% requirement rests on the undisputed documentary record regarding membership status and Ownership Percentages at the time of the vote; it does not depend on Lindsay's earlier pleading admission about the percentage of interests Cameron and Horatio held.

14

OA by a 67% vote. Here, the members' meeting action, memorialized in minutes, invoked the § 6.k authority; the Articles were amended accordingly; and the OA's term clause, to the extent not yet conformed on paper, must be read consistently with the vote the OA itself authorized. *Accord Krajacich*, ¶ 13 (terms "inconsistent with the general nature of the contract or the primary intention of the parties are to be rejected" (citing § 28-3-503, MCA)). In short, the substance of the governance decision—not the absence of a superfluous instrument—controls.

¶28 Section 35-8-202(3), MCA, does not change this result. That statute provides that, as between the members, the operating agreement controls over any conflicting provisions of the articles of organization. Here, however, the November 2015 vote and resulting amendment to the Articles are consistent with the OA because § 1.d and § 6.k contemplate that the members may, by the specified supermajority, extend or continue the LLC's business beyond the original 2024 term. The Articles change thus implements, rather than conflicts with, the members' internal agreement about how and when to alter the LLC's term.

¶29 We hold that, on this record and the OA's text, the District Court correctly concluded that the November 2015 vote validly exercised the OA's § 6.k authority and effectively amended the LLC term. Accordingly, the court correctly granted summary judgment to Cameron and the LLC that the LLC is a perpetual-term entity.

¶30    *2. Did the District Court erroneously require joinder of H.W. Burns Family LLC as a defendant?*

¶31    Lindsay argues that the District Court abused its discretion in ordering her to join the LLC as a defendant in her individual and derivative claims because joinder was not required under the rules, was untimely under the court's scheduling order, and was unduly burdensome because it required her, as an LLC member, to pay for defending against her own claims.

¶32    "On motion or on its own, the court may at any time, on just terms, add or drop a party." M. R. Civ. P. 21. A party must be joined in an action, if feasible, and "[i]f in that [party]'s absence, the court cannot accord complete relief among existing parties." M. R. Civ. P. 19(a); *see also Mohl v. Johnson*, 275 Mont. 167, 169, 911 P.2d 217, 219 (1996) (Rule 19(a) defines "an indispensable party"). Rule 19 "contemplates the liberal use of joinder." *Village Bank v. Cloutier*, 249 Mont. 25, 29, 813 P.2d 971, 974 (1991) ("persons materially interested in the subject of an action" must be joined so "they may be heard and a complete disposition of the case be made"); *accord Ioerger v. Reiner*, 2005 MT 155, ¶ 13, 327 Mont. 424, 114 P.3d 1028. Likewise, in an action for declaratory relief, "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Section 27-8-301, MCA.

¶33    Sections 35-8-1101 and -1104, MCA, authorize suits by or against an LLC "in its own name," including derivative suits brought by members on behalf of the LLC "in the right of the company" when those "having authority to bring the action have

16

refused" or any effort to make them do so is unlikely to succeed.[6]  In suits brought on behalf of an entity for its benefit, the entity "is a necessary party, either plaintiff or defendant."  *Hanrahan v. Andersen*, 108 Mont. 218, 242, 90 P.2d 494, 504-05 (1949) (citing *Kleinschmidt v. American Min. Co. Ltd.*, 49 Mont. 7, 18-19, 139 P. 785, 788-89 (1914) (in a suit brought by minority shareholders against a single corporate director, the company was a "necessary" party because, "though the action [was] prosecuted by the plaintiffs, and plaintiffs and defendants are the real adversary parties, it [was] prosecuted for the benefit of the company")).[7]  This is because:  (1) the plaintiff's rights "are dependent on establishing the [entity]'s rights"; (2) the parties are entitled to a judgment that will "bind" the entity and "thus conclude the matter in controversy from further litigation"; and (3) the entity "is entitled to notice so as to have the opportunity to represent its own interests."  *Hanrahan*, 108 Mont. at 242, 90 P.2d at 504-05.[8]

¶34    Here, Lindsay sought a declaratory judgment to force the LLC's dissolution in December 2024.  She says joinder was not necessary where the parties, in their individual

---

[6] *See also* § 35-8-1104(2), MCA ("[i]n a derivative action for a limited liability company, the plaintiff must be a member of the company when the action is commenced" and "at the time of the transaction of which the plaintiff complains"); M. R. Civ. P. 23.1 (pleading requirements for derivative actions).

[7] In *Kleinschmidt*, 49 Mont. at 18-19, 139 P. at 788-89, all company directors joined in the defendant's answer, "making common cause with [him] and justifying their action in his behalf."

[8] In a derivative action, the "claim pressed by the stockholder . . . is not his own but the corporation's.  The corporation is a necessary party to the action; without it the case cannot proceed.  Although named a defendant, it is the real party in interest, the stockholder being at best the nominal plaintiff.  The proceeds of the action belong to the corporation and it is bound by the result of the suit."  *Ross v. Benhard*, 396 U.S. 531, 538-39, 90 S. Ct. 733, 738 (1970).  *Accord Davenport v. Dows*, 85 U.S. 626, 627, 18 Wall. 626 (1873).

capacities, together owned all the LLC's shares. But the LLC is a legal entity, distinct from its individual members. *See Sagorin v. Sunrise Heating & Cooling, LLC*, 2022 MT 58, ¶ 11, 408 Mont. 119, 506 P.3d 1028; *Noble v. Farmers Union Trading Co.*, 123 Mont. 518, 522-23, 216 P.2d 925, 927-28 (1950). The LLC was thus an independent party whose interest "would be affected" under § 27-8-301, MCA, by a declaratory judgment regarding dissolution. It therefore follows that the court could not accord "complete" declaratory relief "among the existing parties" under M. R. Civ. P. 19. Moreover, a determination of the LLC's rights regarding dissolution without its appearance would violate due process. *Ioerger*, ¶ 22 ("[t]he basis of the rule on joinder is founded on due process considerations of notice and a right to be heard").

¶35 Therefore, the LLC was a "necessary party" and properly aligned as a defendant in this derivative-style posture so the entity's interests would be represented and bound by any court decision. *Accord Hanrahan*, 108 Mont. at 242, 90 P.2d at 504-05; *Kleinschmidt*, 49 Mont. at 18-19, 139 P. at 788-89. Entity alignment as a defendant is routine when management opposes the plaintiff's claims or requested relief. An adverse decision against Cameron—named only in his individual capacity—would not bind the LLC, a distinct legal entity. Notably, once joined, the LLC opposed Lindsay's requested relief and counterclaimed for a declaratory judgment to preserve its continued existence. The District Court's alignment ensured the LLC's separate legal interests—distinct from any Member's—were represented and bound. This was not an abuse of discretion.

¶36 Lindsay's timeliness and burden arguments also do not demonstrate abuse of discretion. She acknowledges that Rule 19 and § 27-8-301, MCA, impose no time

18

limitations on joinder of necessary parties. Also, Rule 19 joinder is not waived by the case schedule if joinder is necessary to do justice. Here, the District Court expressly considered any burden that joinder may impose and limited the LLC's recoverable costs to avoid Lindsay's having to "double pay" through ownership. On this record, the District Court's Rule 19 decision falls well within its broad discretion and we therefore affirm it.

¶37    *3. Did the District Court erroneously order Lindsay Barbier to pay professional and attorney fees for a non-party hybrid witness?*

¶38    Lindsay challenges the District Court's order that she pay Bennett's $4,410 professional and attorney fees. As a threshold matter, Cameron and the LLC argue this Court lacks jurisdiction to consider Lindsay's claim because Bennett was not served with a notice of appeal. Lindsay answers that Montana's Rules of Appellate Procedure do not require service of papers on non-parties.

¶39    The Montana Rules of Appellate Procedure "govern proceedings before the supreme court." M. R. App. P. 1(2). Under these rules, "the timely filing of a notice of appeal . . . is required in order to invoke" this Court's appellate jurisdiction. M. R. App. P. 4(2)(c); *accord In re M.L.Y.*, 201 Mont. 467, 470, 655 P.2d 499, 501 (1982).[9]

> The notice of appeal . . . shall specify the party or parties taking the appeal[10] . . . and shall designate the final judgment or order or part thereof from which the appeal is taken. An appeal from a judgment draws into

---

[9] This Court may waive timeliness upon showing of "[e]xtraordinary circumstances." M. R. Civ. P. 4(2)(c) and 4(6).

[10] "The caption of an appeal shall list the parties in the same order as the caption used in the district court, with the addition of the designations 'appellant' and 'appellee' as appropriate." M. R. App. P. 2(4).

question all previous orders and rulings excepted or objected to which led up to and resulted in the judgment.

M. R. App. P. 4(4)(a). "An appeal is taken by timely filing a notice of appeal in accordance with" M. R. App. P. 10(1) in the office of the Clerk of the Supreme Court.[11]  M. R. App. P. 4(2)(a). "A copy of the notice of appeal shall be contemporaneously served for filing in the office of the clerk of the district court and served on all parties." M. R. App. P. 4(2)(a); *see also* M. R. App. P. 4(5) (time for filing notice of appeal). The "parties to proceedings before this court" are the Appellant, Appellee, Petitioner, Respondent, Relator, and Intervenor. M. R. App. P. 2(1). Under these Rules, Bennett was not a "party" to the District Court proceedings and is not a party on appeal.

¶40    Cameron and the LLC cite to numerous cases for the proposition that this Court lacks jurisdiction, but they are all distinguishable.  First, these cases involved since-repealed Revised Codes provisions expressly requiring service of a notice of appeal "on the adverse party[] or his attorney." These Code provisions effectuated Montana's 1889 Constitution, which, unlike the 1972 Constitution, expressly limited Supreme Court appellate jurisdiction to "as prescribed by law."[12]  The 1889 Constitution also did not permit this Court's promulgation of rules for appellate procedure, which, under the 1972

---

[11] Rule 10(1) provides that "[p]apers required or permitted to be filed must be placed in the custody of the clerk of the supreme court within the time fixed for filing."

[12] Therefore, these Code provisions were "jurisdictional." *See Featherman v. Granite Cnty.*, 28 Mont. 462, 463-64, 72 P. 972, 973 (1903) (discussing the 1889 Constitution's Supreme Court jurisdictional provisions, for example, Art. VIII, § 3 ("[t]he appellate jurisdiction of the supreme court shall extend to all cases at law and in equity, subject, however, to such limitations and regulations as may be prescribed by law")). *Compare* 1972 Mont. Const. art. VII, §§ 1, 2.

Constitution, now exclusively govern proceedings before this Court. Mont. Const. art. VII, § 2(3); M. R. App. P. 1(2). Second, in all cases, the party or parties not properly served with a notice of appeal were actual adverse parties in the proceedings below.[13] Finally, Cameron's reliance on *Joseph Eve & Co. v. Allen*, 284 Mont. 511, 945 P.2d 897 (1997), is also misplaced; that case involved whether an untimely cross-appeal effectively raised issues for appellate review.[14] Here, Lindsay properly invoked this Court's jurisdiction under the Montana Rules of Appellate Procedure and we therefore turn to the merits of her claim.

¶41    Montana law fixes a statutory witness fee for deposition attendance absent agreement or an order conditioning compliance on additional compensation. *See* §§ 26-2-501(1), -507, MCA; M. R. Civ. P. 45(b) ($10 per day witness fee and mileage allowance); *Goodover v. Lindey's*, 255 Mont. 430, 443, 843 P.2d 765, 773 (1992) (court not authorized to impose costs more than statute provides). M. R. Civ. P. 45 governs subpoenas. The Rule imposes a duty upon the issuing party to "take reasonable steps to avoid imposing undue burden or expense" on the subject, M. R. Civ. P. 45(d)(1), and

---

[13] *See W. Holding Co. v. N.W. Land & Loan Co.*, 113 Mont. 24, 35-38, 120 P.2d 557, 561-63 (1941) (applying § 9733, RCM (1935)); *In re Malik's Estate*, 124 Mont. 585, 587-89, 228 P.2d 963, 964-65 (1951) (applying § 93-8005, RCM (1947)); *McLeod v. McLeod*, 124 Mont. 590, 592-94, 228 P.2d 965, 967-68 (1951) (same); *Seiffert v. Police Comm'n*, 144 Mont. 52, 394 P.2d 172 (1964) (same).

[14] *Jospeh Eve* affirms the general principle that timely filing a notice of appeal vests this Court with jurisdiction over the parties and subject matter. *See M.L.Y.*, 201 Mont. at 470, 655 P.2d at 501; *cf. Joseph Eve*, 284 Mont. at 512, 945 P.2d at 898-99 ("the time limit for the filing of a cross appeal is jurisdictional" and therefore this Court "only has jurisdiction over those issues addressed in the appeal or a properly filed cross appeal").

likewise requires a court, on timely motion, to quash or modify a subpoena that "subjects a person to undue burden." M. R. Civ. P. 45(d)(3)(A)(iv) (mandatory).

¶42 Absent a showing of "undue burden," a court may still modify or quash a subpoena, on motion, if it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." M. R. Civ. P. 45(d)(3)(B)(ii) (permissive). Finally, as an alternative to quashing or modifying a subpoena, a court may, on motion, "order appearance" on condition the serving party "ensures that the subpoenaed person will be reasonably compensated." M. R. Civ. P. 45(d)(3)(C)(ii) (permissive).

¶43 Rule 45's protective mechanisms are prospective and therefore must be invoked prior to compliance. A court cannot quash, modify, or condition compliance unless "on timely motion." Further, a showing of "undue burden" requires a court to "quash or modify" the subpoena; the Rule does not authorize post-hoc award of additional witness compensation on those grounds. Here, Bennett did not move to quash or condition compliance before the deposition. After both parties identified her as a potential hybrid witness, Bennett scheduled a subpoena through counsel, appeared when formally summoned, testified, and only afterward sought "professional" and attorney fees. On these facts, awarding $4,410 post-hoc under Rule 45(d)(1)'s generalized "avoid undue burden" language clashes with the structure and requirements of Rule 45(d)(3). It also risks asymmetry: although both parties designate a hybrid witness, only the serving party pays to develop the other's rebuttal evidence.

22

¶44 When relief is available, it must be sought pre-deposition and grounded in M. R. Civ. P. 45(d)(3) with proper showings. Because it was not, the District Court abused its discretion in ordering Lindsay to pay costs and fees associated with Bennett's deposition. We therefore reverse the $4,410 award and remand with instructions to limit Bennett's compensation to the statutory witness fee absent a party agreement providing otherwise.

## CONCLUSION

¶45 We hold the District Court correctly granted summary judgment to Cameron and the LLC that the OA provides two complementary pathways to amendment; the November 14, 2015 vote was authorized under the OA and validly amended the LLC term; and the LLC is a perpetual-term entity. We also hold that the District Court correctly ordered joinder of the LLC as a defendant in this matter. However, we reverse the District Court's order requiring Lindsay to pay Bennett's costs and fees and instruct the court to limit Bennett's compensation to the statutory witness fee unless the parties agree to additional compensation. Affirmed in part, reversed in part, and remanded with instruction.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

23